## E. A. ROWAN *v.* MINA W. CARLETON.

### [56 South. 329.]

1. REPLEVIN. *Intermingling property. Evidence. Burden of proof.*

    Appellant granted to appellee the right for a period of four years from a given date to cut and remove all merchantable timber on certain lands. Appellee during the four years cut a large number of logs on the land and mingled logs cut from other lands with them but failed to remove the logs from appellants land during the four years. *Held*, that in an action of replevin by apellant for the logs the burden of proof was on appellee to identify the logs cut from appellant's land; failing to do this appellant should recover all the logs.

2. SAME.

    Trees which are simply felled and cut into appropriate lengths for manufacture are not manufactured articles and the fact that they are moved from the place they were cut to another portion of the land and there stacked preparatory for shipment is immaterial.

APPEAL from the circuit court of Quitman county.
HON. SAM. C. COOK, Judge.

Suit by E. A. Rowan against Nina W. Carleton. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*P. H. Lowery,* for appellant.

This is a replevin suit for logs brought by the appellant as plaintiff against the appellee as defendant.

On the 17th day of April, 1902, the appellant entered into a contract with the appellee. By this contract the appellant gave and granted to the appellee the right for a period of four years to cut and remove timber from the lands described in the contract, expressly stipulating that "this right shall cease at the end of the said four years." It will be noticed that this was not in terms a

sale of the timber on the particular land with a limitation of time to remove. It was simply a right to cut and remove for a limited time and took the precaution to expressly stipulate that nothing more was granted. In many of the courts a distinction is made between a contract of this character and a conveyance in fee of the timber. Many courts hold that where there is a conveyance in fee the title to the timber absolutely passes and that there is no reversion of the title at the expiration of the limited time, and many distinctions have been drawn between the two classes of contract. Some courts have held that the timber belongs to the grantee even after the limitation is out but that he has no right to enter and remove it, but so far as my investigation has gone I think I have found no case holding this rule where there is nothing more than a reservation of the right to cut or a grant of the right to cut and remove timber, the question being one of title. These distinctions are especially brought out in *Golden* v. *Glock* (Wis.), 46 Am. Rep. 32; *Saltonstall* v. *Little* (Pa.), 35 Am. Rep. 683; *Irons* v. *Well* (N. J.), 32 Am. Rep. 193, and note; *Rich* v. *Zulesdorf* (Wis.), 99 Am. Dec. 81; *Holt* v. *Baldwin* (Mich.), 1 Am. St. Rep. 551; *Detroit* v. *R. R. Co.* (Mich.), 32 L. R. A. 102.

I have called attention to this line of cases to show that even under the strongest rule held by any of the courts in the class of cases similar to this one at bar, the courts have always held that the limitation of the right to cut was the limitation of title, the conflict of decisions being on that class of cases where there was an absolute grant of title or a reservation of title. In those cases the courts have been somewhat divided, some courts holding that there was no reversion of title on account of the limitation where there had been an unconditional conveyance.

This court, however, has set the matter at rest in this state by the decision in *Clark* v. *Ingram-Day Lumber*

Co., 90 Miss. 479. In this case this court has taken the sensible view that the limitation in the contract means what it says, and has not split hairs as to the rights of parties after the expiration of the time. I take it that this decision settles the principles in the case at bar.

It will be noticed by reference to the contract above referred to that the appellee's right to cut and remove, which was the only thing granted under the contract, even construed most liberally for the appellee, expired on April 17, 1906. It will also be observed from the evidence in the case that the appellee had sought to obtain an extension of the time for cutting and removing the timber which the appellant had expressly declined to grant. It will also be observed from the evidence that the appellee had cut the timber on the land up to the very expiration of the term, some of which was lying at the place where the trees had been felled but much the larger part of which had been removed and piled along and near a tramroad built by the appellee on the lands described in the contract. Evidently the idea of the ap- pellee was that if the timber was severed from the soil it became hers and the object seemed to be to thus ob- tain title to as much of it as possible.

That all of this timber which was cut on the appel- lant's land and which was left lying on his land, whether at the stump of the tree where severed or removed to another place was the property of the appellant seems to be settled by the case of *Clark* v. *Ingram-Day Lumber Co., supra.*

The court below so instructed and there is no point of controversy here so far as the appellant is concerned.

I think the main question here involved and the ques- tion which settles this controversy, is the question of the burden of proof as to the identity of the evidence, and I might say it is not controverted that much the greatest number of logs, and in fact almost all of them which were seized under the replevin writ in this case at the suit

of the appellant, were cut on the appellant's land. While there is some evidence that some of them were removed from other lands and piled on this land, it is of an uncertain character. It is impossible to tell just which of the logs were brought from other lands. The contention of the appellant is and was in the lower court, as shown by the instructions asked and refused, that the burden was on the appellee to identify and point out such logs as she claimed had been brought from other lands and by her employees mixed with the logs belonging to the appellant.

While the appellee had the right to enter upon the lands of the appellant and cut and remove logs up to the 17th day of April, 1906, we contend that she had no right to bring logs from other lands and intermingle them with the logs from appellant's land so as to make identification by other parties impractical and then claim and hold the appellant's logs because of this impracticability of identification, caused by her act. In fact her only right on appellant's land, according to the evidence in this case was to cut and remove timber from the same and any piling of timber from other lands upon this land was wrongful. It is not necessary, in order for the rule as to confusion of goods to apply that the intermingling should have been willful, or that it should have been done for the purpose of defrauding. That goods in this case were intermingled is evident. That it was not done by the appellant is also evident and that it was done by the appellee is quite as apparent. This being the case it seems to me there can be no controversy as to the rule of evidence. 3 Ency. of Evidence, 365; 6 Am. and Eng. Ency. Law, 596, and note 2; 8 Cyc. 571 and 575, note 29, and 576, note 33; *Evans* v. *Morgan,* 69 Miss. 329; *Oulette* v. *Davis,* 69 Miss. 762, 75 Am. Dec. 233.

The books are full of this kind of law but this seems to be sufficient.

*M. E. Denton,* for appellee.

For reasons which seems to me to be apparent from the record and which I think require no argument, I do not agree with counsel for appellant that there was error in the court below; but, even if that be conceded, the judgment should still be affirmed because the right result was reached. The logs involved here belonged to appellee, and the peremptory instruction asked by her should have been given because admittedly she had cut the logs within the time limited in her contract with appellant; and, under the decision of this court, she had also "removed" them within that time. The question as to what constitutes such a "removal" and other cognate questions arising out of transactions very similar to this one have been discussed and decided many times by the courts of other states with considerable conflict of opinion; but I do not think it necessary to refer to any of these decisions because those of our own court on the same subject are as much in point as the others, or more so. In *Clark* v. *Ingram-Day Lumber Co.,* 90 Miss. 479, 43 South. 813, this court decided that the grantee in a deed conveying timber and giving a limited time within which to remove "the sawlogs" has no right after the expiration of the time limited to enter upon the land and remove the logs (or felled trees, I cannot tell which from the reported case) which he had previously cut and "left lying on the ground at the stump where they were cut." In *Butler & Barrow* v. *McPherson Bros.,* 49 South. 257, this court subsequently held that the rule announced in *Clark* v. *Ingram-Day Lumber Co.,* do not apply where the timber had been made into cross ties or its "use and nature changed" but that "only the timber standing or lying upon the ground in its natural state at the expiration of the time limit in the contract was forfeited to appellee."

Mrs. Charleton, in spite of all the pitiable conditions which surrounded her, in spite of the assassination of

her husband at this critical time, in the face of the unusually adverse weather conditions which prevailed during that fall and winter, unused to business methods and especially the rough methods of the logging camp, went to work and had all of these logs cut before the time for which it seems her adversary was longing. If she had stopped there, the logs would not be his under the rule in *Clark* v. *Ingram-Day Lumber Co.*, but she did not stop there. She had them all hauled, at great expense to herself, from the land where they were cut to the tram road for shipment to market. According to my recollection, the evidence shows that the cost of this cutting and hauling was as much or more than the stumpage value of the timber as it stood in its natural state. Is not this added expense as potent as the fifteen cents which it cost to make the cross ties in the Barrow & Butler case? And by this expense and labor she had completely changed the nature of the timber. It was changed from realty to personalty, from useless trees in the wild wood, inaccessible and without value on the open market, to salable logs such as constitute a great part of the commerce of the delta, with a cash value in the markets of the country; and they were placed on the tramroad ready for shipment. If they had been placed in a regular depot on a railroad which happened to be on appellant's land and tagged for shipment there could be no difference. Appellant himself testified that as the logs lay on the tramroad they were articles of commerce. It should be remembered also that the land on which appellee purchased this timber was a very large tract and the logs were cut on one subdivision and hauled quite a long distance and placed on another part of appellant's land within the time limited in the contract. This was therefore an actual removal in fact of the timber from the land whereon it grew. The fact that these logs were piled on some other land belonging to appellant after their removal

from the land where they were cut in accordance with the contract surely cannot work a forfeiture.

Mrs. Carleton built this tramroad on appellant's land with his knowledge and implied consent, at great expense, for the purpose of marketing these logs after they had been cut and hauled; and he knew that she was hauling them with the intention of shipping them out after her time expired. If he desired to make any objection it was his duty to make it then, and appellee could have complied with the greatest ease by driving her teams a very few yards further as the logs were unloaded very near the line. The proof shows that it had been a custom from time immemorial in that country for loggers to pile their logs at any convenient place for shipment on the wild lands of others, such as the land of appellant is, without the necessity of getting the permission of the owner. Nobody thought of such a thing. There was common consent for the benefit of all. Appellant had the right to repudiate this custom if he chose, but it was his duty to notify appellee that he intended to do so. It is plain that she was acting in perfectly good faith, doing more than she had at least apparent right and license to do and that she had not the least idea that this apparent right would or could be questioned—that is, until this strange suit was brought.

"The law abhors forfeitures," and a forfeiture in this case especially would be monstrously odious.

SMITH, J., delivered the opinion of the court.

On the 17th day of April, 1902, appellant by deed granted to appellee "the right for a period of four years from this date to cut and remove all merchantable timber" on certain land. Within the life of this contract a considerable portion of the timber was cut down by appellee and cut into sawlogs. Appellee also built a tramroad through the land for the purpose of removing logs therefrom. These sawlogs were removed from the

place where they were cut, and stacked near this tram-road, on appellant's land, preparatory to shipment, and there remained until after the expiration of four years from the date of the contract. Certain other logs, cut from land other than that of appellant, were intermingled by appellee with the logs cut from appellant's land. These logs were not marked in any way that would enable appellant to distinguish them from the logs cut from his own land. After the expiration of the time limit pro-vided in the contract, appellant claimed the logs cut from his land and not removed therefrom, and instituted this action of replevin in the court below to recover the pos-session of same. The writ was by the sheriff levied upon all of the logs found on appellant's land. From a judg-ment in appellee's favor, this appeal is taken.

The court fatally erred in instructing the jury that the burden of identifying the particular logs cut from his land was upon the appellant. *Evans* v. *Morgan*, 69 Miss. 329, 12 South. 370; *Ouilette* v. *Davis*, 69 Miss. 762, 12 South. 27. Appellee having intermingled these logs with logs cut from other lands, in such manner that it became impossible for appellant to identify them, she must bear the loss and inconvenience resulting therefrom. Should she desire to retain the logs cut from land other than that of appellant, it devolves upon her to furnish the proof necessary to separate them from those cut from appellant's land.

Appellee contends, however, that the granting of this instruction is harmless error, for the reason that saw-logs are manufactured articles, within the rule applied in *Butler* v. *McPherson Bros.*, 95 Miss. 635, 49 South. 257. In this appellee is mistaken, for sawlogs are not manufactured articles within this rule, as will appear from an examination of *Clark* v. *Ingram-Day Lumber Company*, 90 Miss. 479, 43 South. 813, and *Butler* v. *McPherson Bros.*, *supra*. They are simply felled trees cut into appropriate lengths for manufacture. The fact

that the logs were moved from the place where they were cut to another portion of the land, and there stacked preparatory to shipment, is immaterial.　*Strong* v. *Eddy*, 40 Vt. 549; *Gamble* v. *Gates*, 92 Mich. 510, 52 N. W. 941.　　　　　　　　*Reversed and remanded.*