MISSISSIPPI POWER & LIGHT CO. *v.* A. E. KUSTERER & CO.

(Division B.   Jan. 6, 1930.)

[125 So. 429.   No. 28172.]

Agnes C. Tufverson, of New York City, and Green, Green & Potter, of Jackson, for appellant.

24

Alexander & Alexander, of Jackson, for appellee.

Argued orally by **Garner W. Green,** for appellant, and by **Julian P. Alexander** and **J. C. Satterfield,** for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee, a corporation under the law of the state of Michigan, filed its bill in the chancery court of Hinds county, against appellant, a Maryland corporation, to recover the sum of one thousand seven hundred five dollars, with interest, being the face value of certain coupons described in the bill, held by appellee against appellant. The chancery court acquired jurisdiction through foreign attachment by virtue of the fact that appellant was a nonresident corporation, with property in Hinds county in this state. There was a trial on bill, answer, and proofs, resulting in a decree in appellee's favor for the amount sued for; and from that decree appellant prosecutes this appeal.

On June 7, 1920, the Jackson Public Service Corporation executed and delivered to the Chicago Trust Company, corporate trustee, and W. F. Hopkins, individual trustee, a mortgage, which was duly recorded in the office of the chancery clerk of Hinds county, where the property conveyed in mortgage is situated, to secure a principal amount of three million dollars of bonds then issued by the Jackson Public Service Corporation. Each of the bonds contained the following provision:

"This bond is one of a duly authorized issue of Gold Bonds of the Company of like date and tenor, except as to maturity, interest rate, number and denomination, the aggregate amount thereof being limited so that there shall never be at any one time outstanding Bonds of such issue in excess of an aggregate face value of three million dollars; all issued or to be issued under or in pursuance of, and all equally secured by and subject to, an Indenture of Mortgage or Deed of Trust duly executed by the Company to Chicago Trust Company and Willard F. Hopkins, trustees, under which the property and assets of the Company now owned or hereafter acquired

have been conveyed, transferred and mortgaged to the Trustees. Reference is made to such indenture (which is hereby made a part hereof with the same effect as if herein fully set forth) with respect of the nature and extent of such assets and property and of the covenants, conditions and provisions therein contained, particularly those bearing upon the maturity hereof prior to its fixed due date by reason of default hereunder or under such Indenture, upon the applicability of the Sinking Fund hereto and upon the right to redeem this bond at one hundred two and accrued interest on any interest payment date on thirty (30) days' notice.''

Attached to each of the bonds were six per cent interest coupons as follows:

''$———

''Jackson Public Service Company on the first day of —— A. D. 19—, will pay to bearer, at the office of Chicago Trust Company, Chicago, or of Bankers Trust Company, New York City, at bearer's option, —— Dollars, being semi-annual interest then due upon its First Mortgage Sinking Fund Serial Gold Bond No. ——, Series ——, subject to all terms and conditions of said bond and of the Indenture therein mentioned.''

The mortgage to secure these bonds, and interest coupons attached, contained, among others, the following provision:

''That all or any of the bonds issued hereunder and secured hereby may be redeemed by the company on any interest date at one hundred two per centum of the principal and accrued interest. If the Company shall elect to redeem all or any of the bonds hereunder, it shall notify the Corporate Trustee at least forty days prior to the interest date on which it is its purpose to redeem said bonds, of the aggregate principal amount of bonds which the company desires to redeem. If it is desired to redeem less than the whole issue the corporate

trustee shall thereupon draw by lots a number of bonds equivalent to the amount specified and shall certify to the Company the number of bonds so drawn. The company shall thereupon publish a notice that said bonds so selected are called for payment on the next ensuing interest date, at least once a week for four weeks in newspapers published in the cities of New York and Chicago, having a general circulation, the first publication of which to be at least thirty days prior to the date fixed for redemption. The notices to be given hereunder shall contain the numbers of the bonds selected to be called (unless the redemption be of the entire issue then outstanding) and shall state that upon presentation of said bonds, and the appropriate coupons appertaining thereon for cancellation, at the office of the Corporate Trustee, on or after the next ensuing interest date one hundred two per centum of the principal of said bonds and the interest accrued thereon up to next preceding interest date after the date of said notice will be paid to the holder or holders of such bonds.

"Upon the deposit with the Corporate Trustee prior to the interest date when said bonds are called for payment of the amount necessary to redeem such bonds and the giving of such notice the bonds so called for *payment shall cease to bear interest after such interest date* on which they are called for payment, anything in said bonds or to the bonds appertaining thereon or this Indenture to the contrary notwithstanding, and such deposit with the Corporate Trustee shall constitute full payment of such bonds as between the holders thereof and the company. As and when said bonds are surrendered to the corporate trustee they shall be cancelled and delivered to the company. If any bond called for payment shall not be presented for payment on the interest date set for redemption thereafter the amount payable in respect to such bonds shall be held by the corporate trustee for

account of the holder thereof and shall be paid to the holder of said bonds upon presentation for cancellation of said bond and the appropriate coupons. The trustees shall not be chargeable with interest on moneys deposited for the redemption of bonds.''

Following the financial depression of 1921, the condition of the money market was such that it was found to be impossible for the Jackson Public Service Corporation to dispose of the bonds upon the market, because the interest which they bore was less than that demanded. A part of the bonds had been sold, and were outstanding. The Public Service Corporation tried to sell an additional four hundred thousand dollars of the bonds; and in order to make the bonds marketable, the interest was increased to seven per cent in this manner: In addition to the six per cent coupons already attached to the bonds, one per cent interest coupons, printed on separate sheets of paper from the bonds, and six per cent interest coupons, were attached to the bonds. These additional interest coupons are in this form:

### JACKSON PUBLIC SERVICE COMPANY

will pay to bearer at the office of Chicago Trust Company, Chicago, or of Bankers Trust Company, New York City, at Bearer's option. On the First Day of October, A. D. 1923.

### FIVE DOLLARS

This Note is given to increase the rate of interest on First Mortgage Sinking Fund Serial Gold Bonds numbered below, issued under Trust Indenture Dated October 1, 1919, but is not secured by the lien of said Trust Indenture and may be negotiated Separate from said bond. No. M 1069 Series C. No. 5.

Thereupon, these four hundred thousand dollars of bonds were put upon the market and purchased by ap-

pellee, who in turn negotiated most of them to other persons. Subsequent to their purchase by appellee, and on November 19, 1923, the Jackson Public Service Corporation transferred all of its property covered by the mortgage to appellant, the latter assuming the payment of the bonded indebtedness of the former. The basis of this suit is certain of the one per cent interest coupons.

April 1, 1927, was one of the interest payment dates in the bonds. Appellant desired, under the authority provided in the mortgage and the bonds, to call the payment of the bonds, with accrued interest, on that date. It did so in the manner provided in the mortgage and bonds. Appellant deposited with the corporate trustee the redemption price of the bonds, namely, one hundred two per cent of their principal, and accrued interest to April 1, 1927, including both the interest represented by the six per cent interest coupons originally attached to the bonds, and the one per cent interest coupons later attached. This deposit had been made by appellee before the call date.

At the time the call was made, bonds Nos. D 31 and D 32 were owned by appellee, who thereupon detached from these bonds the one per cent coupons, and delivered the bonds and the six per cent coupons to the corporate trustee from whom it received payment therefor in full. Bonds numbered 4 511, D 485, D 27, and D 28 with the six per cent and the one per cent coupons attached, had been owned by Roger Verseput, Jr., of Grand Rapids, Michigan, and bonds numbered D 4 to D 7, inclusive, with the six per cent and the one per cent coupons attached, had been owned by Mrs. John Ringold, of Grand Rapids, Michigan; but before the call was made by the appellant, they had sold the bonds to other persons, detaching therefrom, and retaining, the one per cent coupons. These one per cent coupons were by them assigned to appellee for collection, along with those held by ap-

pellee. The one per cent coupons, and the bonds to which they were attached, were purchased by the holders before maturity.

Appellant takes the position that the one per cent coupons stand on the same footing as the six per cent coupons, and therefore the call covered the former as well as the latter; while appellee contends that the one per cent coupons represent, not interest, but a bonus to the purchaser, and not being subject to the lien of the mortgage, and being separately negotiable, were not liable to be called with the principal of the bonds and the six per cent interest coupons.

It will be observed that both the bonds and the mortgage expressly provide for their redemption at face value, with two per cent bonus added, and accrued interest, at any interest payment date, on thirty days' notice, etc. The bonds on their face expressly provided that the mortgage given to secure them should constitute part of the bonds as fully as if the mortgage had been copied therein; and the mortgage provided what the bonds should contain. Although, the one per cent coupons provided that they might be negotiated separate from the bonds to which they were attached, and that they were not secured by the lien of the mortgage, they also contained this recital, "This note is given to increase the rate of interest on first mortgage sinking fund serial numbered below, issued under trust indenture dated October 1, 1919," and below the coupon is the number and series of the bond.

The reference in the bonds to the mortgage was in this language: "Reference is made to such Indenture (which is hereby made a part hereof with the same effect as if herein fully set forth) with respect of the nature and extent of such assets and property and of the covenants, condition and provisions therein contained, particularly those bearing upon the maturity hereof prior

to its fixed due date by reason of default thereunder, or under such indenture, upon the applicability of the Sinking Fund hereto, *and upon the right to redeem this bond at one hundred two and accrued interest on any interest payment date on thirty days' notice.''* (Italics ours.)

The mortgage provides in the following language that when the bonds were called for payment they should cease to bear interest after the interest date on which they were called: ''Anything in said bonds or the coupons appertaining thereto, or this indenture, to the contrary notwithstanding, and such deposit with the corporate trustee shall constitute full payment of such bond as between the holder thereof and the company.''

The mortgage, the bonds issued thereunder, and the interest coupons, including the one per cent coupons, together evidence the contract covering only one transaction; and the one per cent coupons were just as much part and parcel of the contract as the six per cent coupons. The only difference is that the one per cent coupons provided on their face that they were not subject to the lien of the mortgage, and were subject to separate negotiation; while the six per cent coupons contained no such provision. Both sets of coupons recite on their face that they represent interest on the bonds.

There is no sound reason for the contention that the one per cent coupons did not represent interest, but a bonus to the purchasers of the bonds. They recite on their face that they were issued as additional interest of one per cent on the bonds. That recital is controlling, and the truth of it is borne out by the surrounding facts and circumstances. In order to determine the purpose and intent of the issuance of the one per cent coupons, the whole contract must be looked to, and its meaning determined from all the instruments evidencing the contract. Every word and part of the contract should be given effect if possible, and made to operate according

to the intention of the parties thereto. Copiah Hardware Co. v. Johnson, 123 Miss. 624, 86 So. 369; Shapleigh Hardware Co. v. Spiro, 141 Miss. 38, 106 So. 209, 44 A. L. R. 393; Harris v. Townsend, 101 Miss. 590, 58 So. 529. "Interest" is compensation allowed by law or fixed by the parties for the use or forbearance of money. 15 R. C. L., p. 3, sec. 2. Construing the language of the one per cent coupons, in connection with the provisions of the mortgage, the bonds, and the six per cent coupons, we think it plain that they constituted interest on the bonds, and not a bonus to the purchasers of the bonds, as contended by appellee. They evidence additional interest to the six per cent coupons for the use or forbearance of the money derived from the sale of the bonds.

Appellee contends, however, that even though the one per cent coupons constituted interest on the bonds, and not a bonus to the purchasers of the bonds, still the one per cent coupons were not subject to call with the principal of the bonds and the six per cent interest coupons. Appellee bases this contention on the assertion that the one per cent coupons were negotiable instruments, and had been purchased by the holders (appellee and appellee's assignors for the purposes of this suit) for value, without notice that they were subject to call before maturity along with the principal of the bonds and the six per cent coupons; and therefore, under the law, they are entitled to collect the one per cent coupons in full. This contention is grounded principally upon the fact that the one per cent coupons were not subject to the lien of the mortgage, and were subject to separate negotiation from the bonds. It is true that the one per cent coupons were negotiable instruments, and that the holders purchased them before maturity; but it is not true that when purchased they had been detached from the bonds and separately sold to the holders. On the contrary, the evidence shows, without dispute, that when

the one per cent coupons were detached from the bonds by appellee and appellee's assignors for the purposes of suit, appellee and its assignors owned both the bonds and the six per cent coupons, and also the one per cent coupons. The one per cent coupons, therefore, were not detached from the bonds by the holders thereof, and separately negotiated to some other person. As shown in the statement of the case, appellee owned some of the coupons sued on, but also owned the bonds to which they were attached; and when the call was made, detached the one per cent coupons and retained them, and received payment in full of the principal of the bonds and the six per cent coupons. The balance of the one per cent coupons sued on were owned by persons who assigned them to the appellee for collection. These persons, previous to the call, had owned the bonds to which these one per cent coupons were attached, and had sold them to other persons, and in doing so detached and retained the one per cent coupons. The entire groundwork of appellee's argument, therefore, goes down under the undisputed facts. We have a case wherein the purchasers of the one per cent coupons acquired them with the bonds to which they were attached. The purchasers had before their very eyes the recital in the one per cent coupons that they were for additional interest on the bonds, and, also, the recital in the bonds themselves that their entire interest was subject to call on any interest payment date.

It is the settled rule in this country that interest coupons attached to bonds, even though they contain no provision that they are subject to separate negotiation from the bonds, nevertheless are so negotiable; but until detached and separately negotiated, they serve no independent purpose. While in the hands of the holders of the bonds they remain mere incidents of the bonds, and have no greater force or effect than the stipulation in the bonds for the payment of interest. While they re-

main in the possession and ownership of the holders of the bonds, it makes no difference whether they are attached to, or detached from, the bonds, for they are then mere evidence of the existence of the interest stipulated for in the bonds. 3 R. C. L., pp. 843, 844, section 18; Bailey v. Buchanan County, 115 N. Y. 297, 22 N. E. 155, 6 L. R. A. 562; Elliott on Contracts, 3578; 7 C. J. 50.

We therefore in this case do not get to the question of whether a holder in due course of these one per cent coupons, separately negotiated from the bonds, would be affected with notice of the recitals in the bonds and the mortgage given to secure them, by virtue of the reference in the coupons to the bonds and mortgage. For, as shown above, we have no such case as that. On the contrary, we have a case where the holder of the one per cent coupons had full notice by the recitals of the bonds and the mortgage that the coupons were for additional interest on the bonds, and that the bonds and all interest were subject to call on any interest date. The case stands exactly as it would if this were a contest between appellant and the original purchaser of the bonds. The authorities relied on by appellee are beyond the case made by the record here.

Reversed, and judgment here for appellant.