SUMTER LUMBER CO., INC., *v.* SKIPPER *et al.*

(In Banc. Nov. 7, 1938.)

[184 So. 296. No. 33276.]

(In Banc.   Dec. 12, 1938.)

[184 So. 835.   No. 33276.]

Clark & Brown, of DeKalb, and **Wilbourn, Miller & Wilbourn**, of Meridian, for appellant.

Spinks & McCully, of DeKalb, for appellees.

W. E. Morse, of Jackson, for appellees.

604

Spinks & McCully, of DeKalb, and W. E. Morse, of Jackson, for appellees on Suggestion of Error.

Argued orally by **R. E. Wilbourn,** for appellant, and by **W. E Morse** and **Press Spinks,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

On and prior to October 16, 1922, J. Q. Skipper, a widower, owned 275 acres of land and the timber thereon, which timber is here in question. On that date he made the following conveyance of the timber to appellant's predecessor in title:

"For and in consideration of Six Hundred Fifty Dollars ($650.00) to us cash in hand paid the receipt whereof is hereby acknowledged, we J. Q. Skipper & ———, his wife, of Kemper County, Miss., have bargained and sold and by these presents do hereby bargain, sell, convey and warrant unto the Sumter Lumber Company, an Alabama corporation, domiciled at Electric Mills, Miss., all of the timber of whatever character or description, lying or being on the following described tracts or parcels of land, being situate in Kemper County, Miss., to wit: (Here follows a description of the lands.)

"Together with the privilege for and during a term of ten years from and after the date hereof, freely to enter upon and over said described lands, for the purpose of cutting and removing said timber, to construct and maintain wagon roads and logging railroads, and to do any and all things reasonably necessary or expedient in the logging of said timber and in the conduct of its said logging operations.

"It is understood and agreed that the Sumter Lumber Company will release the lands as quickly as possible

before the expiration of ten years. In the event the timber cannot be removed before the expiration of the lease, the Sumter Lumber Company has the right to continuous yearly extensions at a price of $25.00 per year notice to be served by J. Q. Skipper as to payments being due.''

The deed was properly acknowledged and was promptly placed on record in the deed records of Kemper County.

None of the timber was removed during the first ten years, nor has it yet been removed. However, beginning with October 16, 1932, and annually for four years, down to October 16, 1936, the right of removal was renewed by the annual payment of the $25.00 as stipulated in the concluding paragraph of the deed, the said annual payments having been made and accepted by voucher checks upon each of which there was a specific recital that it was given for twelve months' extension of time for removal of the timber on the said land, describing it.

In 1925, J. Q. Skipper conveyed to the trustees of the Springhill Consolidated School seventy-five acres of the land, and by two conveyances, one in 1932 and the other in 1934, he conveyed the remainder of the land to his son, S. Q. Skipper. When the check for the annual extension, beginning October 16, 1936, was sent by the lumber company, it was returned by the son, who, in doing so, wrote to the lumber company that his father was physically and mentally unable to look after business; that his father had sold part of the land to him, the son, with no mention of the timber; and that, therefore, the timber on the land so sold belonged to him, the son. Later the son was about to cut the timber, or some of it, and the lumber company filed its bill to have the dispute judicially determined, tendering the $25 for the annual renewal, which had been declined as aforesaid, and has tendered also the subsequent annual payments which have accrued pending the litigation. All persons who had any apparent interest as vendees or otherwise adverse to the lumber company were made parties to the suit.

Although it was the first contention of the son that he had acquired title to the timber because there was no reservation of it in his deeds from his father, the position now taken by him and the other appellees is that the rights of the lumber company had expired by reason of its failure to remove the timber within the allowable period mentioned in the timber deed. They say, in that respect, that it had been possible for the lumber company to remove the timber within the original ten years, and certainly so during that period plus the four years' extensions which had been granted; and they say that any impossibility upon which the lumber company might rely must have been such as was the substantial equivalent of acts of God. The court took the latter view and adjudged that the title or right of the lumber company expired with the expiration of the last extension, or on October 16, 1936.

The lumber company contends that whatever may have been the result of the failure to remove the timber within the first ten years, had that failure been made an issue between the parties, during, or at the expiration of, that time, the said failure was wholly waived by the grantor of the timber by his subsequent renewals and the acceptance of the payments therefor; and that thereafter the deed stood as if no such provision for the removing of the timber as quickly as possible within the ten years had ever appeared in the deed—that after the first extension had been made, the lumber company was entitled to continuous yearly extensions so long as it paid the twenty-five dollars annually therefor, and it relies on Nichols v. Day, 128 Miss. 756, 91 So. 451, in support of this contention. In brief, it is appellant's contention that the stipulation in respect to taking the timber away as soon as possible is not to be carried over into the extension periods.

In the alternative, the lumber company contends that, if mistaken in its position as stated in the next foregoing paragraph, then the provision in the deed as to the time

or period respecting the removal of the timber as quickly as possible means a possibility within the reasons of commercial availability as measured by general business conditions—that it was never meant that the lumber company should be driven to take the timber away when, because of a depression in business conditions, particularly as affecting the lumber market, it could be done only at a loss of timber; that it could never have been contemplated that the grantee had paid a sizable sum for something which because of later depressed business conditions in the lumber and timber market, it would be required to take only by loss of a further sum. And the lumber company offered evidence, which the court declined to consider, that its failure to remove the timber within the period now in issue was due to general business conditions, such as have been mentioned.

The rules for the construction of deeds or contracts are designed to ascertain and follow the actual or probable intention of the parties, and are: When the language of the deed or contract is clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout, the court looks solely to the language used in the instrument itself, and will give effect to each and all its parts as written. When, however, the language falls short of the qualities above mentioned and resort must be had to extrinsic aid, the court will look to the subject matter embraced therein, to the particular situation of the parties who made the instrument, and to the general situation touching the subject matter, that is to say, to all the conditions surrounding the parties at the time of the execution of the instrument, and to what, as may be fairly assumed, they had in contemplation in respect to all such said surrounding conditions, giving weight also to the future developments thereinabout which were reasonably to be anticipated or expected by them; and when the parties have for some time proceeded with or under the deed or contract, a large measure, and sometimes a controlling measure, of regard will be given

to the practical construction which the parties themselves have given it, this on the common sense proposition that actions generally speak even louder than words.

In view of these rules, it is obvious that no such literal interpretation as that contended for by appellees, and adopted by the trial court, may be placed upon the requirement for the removal of the timber, to wit, "as quickly as possible." Certainly, the parties knew that it would be literally possible, physically possible, to remove the timber on a 275-acre tract long within ten years—that throughout such a period no such impossibility as that which would be the equivalent of an act of God would continue to intervene. The simple fact that they provided for eventualities beyond ten years demonstrates, therefore, that no such a literal possibility as has been mentioned was in the minds of the parties. That construction being rejected, what other then is to be accepted? The conclusion must be that the possibility in mind is one which, having regard to the character of the timber, the quantity thereof, its location and accessibility, and the general market conditions appertaining throughout the country as affecting the lumber industry, would permit the lumber company, situated as it was in relation to the land, reasonable care and diligence being exercised, to remove the timber without loss of the value thereof in whole or in part—care being taken that the mere convenience of the lumber company, or its individual inability, growing out of its own internal difficulties, save as to accidents and the like beyond its reasonable control, are not to be considered.

The parties by their own action in the premises, by their distinct conduct, recognized the proposition that under all the surrounding facts and circumstances the rights of the lumber company had not expired at the end of the first ten years; for they then renewed the contract for an additional year, one paying for the renewal and the other accepting the payment without any protest or question, or any suggestion of an objection. And like-

wise for a second, third and fourth renewal year. The only objection or question which was raised was as regards the renewal for the fifth year.

When the lease was renewed for the fourth year, that is to say from October 16, 1935, to October 16, 1936, all questions regarding the failure to remove the timber previous to October 16, 1935, were merged into that renewal and were removed from the domain of further debate or controversy—were foreclosed by the action of the parties themselves. The question of the possibility of removal is, therefore, brought down to the issue whether the situation was such that it could have been done from October 16, 1935, to October 16, 1936, as to which period we think that a reasonable and just construction is that the stipulation as to removal as soon as possible is to be brought forward. We think it must be considered as improbable that the grantor who had twice expressed the requirement that the timber should be removed as quickly as possible within the first ten years would have been indifferent to that requirement as to the extension periods when the annual payments for those extensions were scarcely enough, if enough, to cover the taxes. But whether such a possibility was within the reasonable reach of the lumber company within that year is to be ascertained by applying to the facts the inpretation as respects possibility which we have heretofore indicated as to the meaning of that term. As already stated, the chancellor proceeded upon a different theory, as shown by his opinion rendered at the request of the parties, and the case must, therefore, be remanded for a new trial, and for a decision or finding by the chancellor on the stated issue.

We have not overlooked the argument by appellant that, in any event and inasmuch as the Skippers had renewed the lease year by year without objection, appellant was entitled to assume that they would continue to renew it unless and until the Skippers gave notice a reasonable time before the expiration of the last renewal that

there would be no further renewal. No such notice was given by the Skippers; but it is admitted that when the last renewal was made in the fall of 1935, Sam Skipper then told appellant that he desired to farm the land and that he wanted the timber removed as soon as it could be done. In this situation, appellant was not entitled to assume that the lease would be renewed beyond October 16, 1936, if during the year immediately preceding that date the removal were reasonably possible—using the term "possible" always as we have hereinabove indicated.

It would seem hardly necessary to add that the subsequent vendees of J. Q. Skipper, or their vendees, would have no rights higher than, or different from, that of J. Q. Skipper, had he made no subsequent conveyance. The deed was on record and all persons had constructive notice of appellant's rights in respect to the timber.

The foregoing opinion reflects the views of the writer and of McGEHEE, J., and SMITH, C. J. The other judges will express themselves in separate opinions.

PER CURIAM.—As disclosed by the subjoined opinions, one of the judges is for an affirmance, while five are agreed that the decree should be reversed. But, two of the latter think that a decree for appellant should be entered here; while the other three are of the opinion that the case should be remanded for a further hearing. In such a situation none of the subjoined opinions are to be regarded as the opinion of the court further than as being sufficient to work a reversal and remand, under the authority of McNutt v. Lancaster, 9 Smedes & M. 570, 592.

Reversed and remanded.

**Anderson, J.**, delivered an opinion, concurring in part and dissenting in part.

I agree with the opinion written by Judge GRIFFITH that the decree should be reversed, but disagree with it

that there should be a new trial. I disagree with Judge ETHRIDGE in his dissent in which he takes the position that the decree ought to be affirmed. My opinion is that the Chancellor should have rendered a decree for appellant, and, therefore, this court should do likewise.

In Butterfield Lumber Company v. Guy, 92 Miss. 361, 46 So. 78, 15 L. R. A. (N. S.) 1123, 131 Am. St. Rep. 540, it was held that the standing timber on land could be owned in fee simple separate and apart from the title to the land on which it stood. That means that the fee simple title to the land may go down one line of vendees, and the fee simple title to the timber standing thereon may go down another and different line of vendees. The same principle was reaffirmed in Nichols et al. v. Day, 128 Miss. 756, 91 So. 451.

Appellant got a fee simple title to the standing timber subject to be forfeited after the ten-year period by a failure to pay the annual renewal price of $25, in other words a fee simple title subject to a forfeiture upon condition subsequent. The language in the conveyance upon which appellees base a forfeiture is: "It is understood and agreed that the Sumter Lumber Company will release the lands as quickly as possible before the expiration of the ten years." The law does not favor forfeitures. And that is especially true of equity. A forfeiture will not be declared unless it is either expressly so provided or necessarily implied from the language used. Courts will not search for forfeitures; they must be forced on them. Citizens' Bank of Hattiesburg v. Grisby, 170 Miss. 655, 155 So. 684; New York Indians v. United States, 170 U. S. 1, 42 L. Ed. 927. In the latter case, the Supreme Court of the United States used this language: "A condition, when relied upon to work a forfeiture, is construed with great strictness. The grantor must stand on his legal rights, and ambiguity in his deed, or defect in the evidence offered to show a breach, will be taken most strongly against him, and in favor of the grantee. A condition will not be extended beyond its express terms

by construction. The grantor must bring himself within these terms, to entitle him to a forfeiture. Jones, Real Prop., secs. 678, 679.''

Nichols v. Day, supra, is in point. It is true that the conveyance in that case fixed no time for the removal of the timber, nor did it provide that it should be removed as quickly as possible. It was an outright sale of the timber in fee as here, with a provision that the purchaser should have ten years within which to remove it, and, if not removed within the ten years, with the right of annual renewal on payment of $230 a year.

The turning point with the other members of the court appears to be the phrase ''as quickly as possible.'' The contract does not provide, however, that there shall be a forfeiture of title if that provision is violated. The decisions of our court holding that where the conveyance fixes a definite time for the removal of the timber, without any right of extension, there is a forfeiture of title if not removed within the time limit fixed are not in point here because this conveyance has no time limit. Judges GRIF-FITH and ETHRIDGE are writing into this contract a thing the parties could have written into it and declined to do so, namely, a forfeiture of title.

McGowen, J., concurs in this opinion.

Ethridge, J., delivered a dissenting opinion.

I cannot agree with the construction put upon the contract as stated in the opinion of Judge ANDERSON. The contract cannot be segregated, but must be taken as an entirety, and its meaning determined from all of its parts construed together, giving to its words their plain and commonly accepted meaning.

The effect of the majority opinion is to read out of the original contract the words, ''It is understood and agreed that the Sumter Lumber Company will release the land as quickly as possible before the expiration of

ten years, in the event the timber cannot be removed before the expiration of the lease.'' Leaving the most vital and important part of the contract out of the provisions for the extension, it is manifest that the parties intended that the provisions of the contract as to the ten-year period would be carried forward into the extension perriod if it should be impossible—using the word ''impossible'' in its reasonable acceptation—to remove the timber within the ten-year period. It put the parties in the absurd position of contracting during the ten-year period that the land could be released as quickly as possible before the expiration of the ten-year period; but if it was not removed during that ten-year period, then the obligation to remove the timber expeditiously would be eliminated, and the appellant given the privilege forever to use the land of the appellee for a mere nominal consideration for the support and growth of its timber, and entirely deprive the appellee of any right to use the land so long as the appellant saw proper to pay $25 a year for the use of 275 acres of land. The decision here, in my opinion, goes in the teeth of the fundamental rules for the construction of contracts, and accomplishes an absurd result, promoting injustice, rather than justice.

In Gulf & S. I. R. Co. v. Patten, 180 Miss. 756, 178 So. 468, at page 762 of 180 Miss., at page 469 of 178 So., the Court said: ''In construing deeds, the intention of the parties is sought to be effectuated, of course, but this intention must be found in the language of the instrument; so that effect must be given, if possible, to each item of the written contents, and no item shall be stricken or rejected so long as it may be harmonized with the other items.'' Citing Dunn v. Stratton, 160 Miss. 1, 7, 133 So. 140, in which it was held that: ''Courts, in construing deeds, must effectuate intention of parties. Intention of parties to deeds must be found in writing by way of complete delineation of description on face of deed or by dependable references therein made which, when applied, render delineation complete. No item included

as part of description in deed should be rejected as erroneous or varied so long as it is reasonably possible to make all items harmonize."

In Goosey v. Goosey, 48 Miss. 210, it was held that: "It is a cardinal rule in the construction of written instruments to give the words their ordinary and grammatical meaning, and then gather from the entire instrument the intent of the parties. The whole instrument must be considered in determining the meaning of its separate parts, so that, if practicable, harmony and congruity may be attained, ex antecedentibus et consequentibus. The rule, that if there be earlier clauses in a deed repugnant to later clauses, the latter shall prevail, does not apply where the inconsistent clauses can be made to harmonize with the general purpose of the parties as derived from the whole instrument."

In Isler v. Isler, 110 Miss. 419, 70 So. 455, it was held that where "it appears by contract that a party intends to bind himself, trivial inaccuracies will be disregarded and if the intention of the parties can be ascertained, courts will effectuate that intention."

In Jones v. Mississippi Farms Co., 116 Miss. 295, 76 So. 880, it was held that the "intention of the parties must be drawn from the words of the whole contract, and if, viewing the language used, it is clear and explicit, then the court must give effect to this contract unless it contravenes public policy. If the language is doubtful, the court will look to the surroundings of the parties and to the construction placed upon the contract by the parties during its existence in order to learn the intention of the parties."

In United States F. & G. Co. v. Parsons, 154 Miss. 587, 122 So. 544, it was held that the court "must, if possible, ascertain and give effect to mutual intention of parties." And in Mississippi P. & L. Co. v. Kusterer & Co., 156 Miss. 22, 125 So. 429, it was held that every word and part of a contract should be given effect if possible. See, also,

Tatum v. McLellan, 50 Miss. 1; Hart v. Gardner, 74 Miss. 153, 20 So. 877.

It is said in Judge ANDERSON's opinion that the appellee, J. Q. Skipper, conveyed a fee simple title to the timber, quoting in support thereof Butterfield Lumber Co. v. Guy, 92 Miss. 361, 46 So. 78, 15 L. R. A. (N. S.) 1123, 131 Am. St. Rep. 540, and Nichols et al. v. Day, 128 Miss. 756, 91 So. 451. Neither of these cases is in point here. In Butterfield Lumber Co. v. Guy, supra, there was nothing in the contract with reference to the period of time in which to cut and remove the timber from the land, and the court held that there was a fee simple title to the timber there conveyed.

In Nichols v. Day, supra, the clause there involved with reference to the timber's removal was, "for a term of 10 years in which to remove in the event the same has not been removed by paying a penalty of 10 per cent. per annum for each renewal." The pertinent provision there was "in the event the same has not been removed by paying a penalty of 10 per cent.," etc. That is, if the timber for any reason whatever had not been removed by the end of the ten years specified therein, by paying a penalty of ten per cent. per annum it could be renewed. The contract in this case contains no conditions like the contract here before us.

In Finkbine Lumber Co. v. Saucier, 150 Miss. 446, 116 So. 736, it was held that the right to reversion of timber remaining on the land after expiration of the period of twenty years given purchasers of timber within which to remove same did not pass to grantee under the deed conveying the land with reservation of timber, since reservation excluded timber from description of property conveyed and showed intention on part of grantors not to convey it.

In Clark v. Ingram-Day Lumber Co., 90 Miss. 479, 43 So. 813, a person sold to the lumber company all saw log timber on certain lands, giving it three years in which to remove the saw logs. The lumber company

sold its interest to a grantee who, at the expiration of the three years had not removed all the timber, but a large quantity had been cut and left on the land. The Court held that after the expiration of the time fixed by the contract the grantee had no further right on the premises or to the timber, whether standing, or cut and left lying upon the land.

In Rowan v. Carleton, 100 Miss. 177, 56 So. 329, it was held in a replevin by the owner of land for logs cut by the defendant, and left on the land, after the termination of the contract under which they were cut, mingled with logs cut from other lands, which the appellee had failed to remove, that in an action of replevin by appellant that the burden of proof was on the appellee to identify the logs cut from appellant's land, and failing to do this, appellant should recover all the logs lying upon his land after the expiration of the contract time. That in determining the rights of parties to a contract granting a period of four years to cut and remove timber it was held that saw logs were not manufactured articles, but belonged to the grantor when left on the land after the expiration of the time.

In Crorow Hardwood Co. v. Burks, 149 Miss. 327, 115 So. 585, it was held that the purchaser of standing timber did not receive such title as authorized its removal after expiration of period granted therefor. In Smith v. Salmen Brick, etc., Company, 151 Miss. 329, 118 So. 179, it was held that where the time for removal of timber expires under a deed, the timber reverts to the grantor selling the land, and, on his death, to the heirs-at-law.

It has been universally recognized in this state that where timber was sold, to be removed within a given time, at the expiration of the time the timber remaining on the land belongs to the grantor. In such case the deed does not convey a fee simple title, but a qualified or conditional or limited fee, which is less than a fee simple.

The parties to the transaction here involved manifestly understood at the time of the execution of the contract that if an extension was granted, the conditions of the original contract would be carried into the granted extension of time; and any construction to the contrary is to involve a grantor in labyrinthine entanglements of technicality, resulting in injustice, rather than justice.

In the opinion written by Judge GRIFFITH, and concurred in by Judge McGEHEE and the CHIEF JUSTICE, it is said: "The conclusion must be that the possibility in mind is one which, having regard to the character of the timber, the quantity thereof, its location and accessibility, and the general market conditions appertaining throughout the country as affecting the lumber industry, would permit the lumber company, situated as it was in relation to the land, reasonable care and diligence being exercised, to remove the timber without loss of the value thereof in whole or in part—care being taken that the mere convenience of the lumber company, or its individual inability, growing out of its own internal difficulties, save as to accidents and the like beyond its reasonable control, are not to be considered."

I cannot concur in this opinion. When buying the timber at a nominal consideration the appellant agreed to free the land of the timber before the expiration of the ten-year period— "as quickly as possible." But in the event it could not be removed within that period, then the appellant had the right to continuous yearly extensions at a nominal sum (less than five cents an acre). This clearly meant that the appellant would be diligent to remove the timber. The record shows that it was clearly possible to remove the timber within that period. The parties did not say anything to the effect that the appellant should be able to make a profit in removing it. That construction injects a new and dangerous element into the law of contracts. It ignores entirely the right of the other party to make use of his property, and forces him to suffer by denial of his rights,

so that his adversary may make a profit. Since when has it become the law that one party to a contract shall make a profit at the expense of the other? The granting of indulgence as to time is not a fact from which it may be inferred that the parties consider it an element of the contract. My brethren are not as clear and safe as they usually are. They seem to be in a fog of sophistry, unable to see clearly the effect of this decision.

I think fourteen years is too long a period, and indicates negligence, and indifference on the part of the appellant to the rights of the appellees. I also think that when J. Q. Skipper conveyed to the school and to his son, the right to further extensions ceased. He had a right to treat the time for removal as being exhausted and the contract forfeited, and his conveyances without reservation operated to terminate the right under the facts of the case.

In making a contract the appellant and the appellee did not contemplate the extension being granted because of market conditions; but the failure to remove within the period must be because of such conditions as make it reasonably impossible for the timber to be removed. The appellant is a large buyer of timber lands, has a mill with a capacity of a million feet a day, and is a large dealer in lumber; and of course, in some instances has bought unprofitable tracts of land for rights of way, and other conveniences, irrespective of lumber values. If profit making be an element in securing the non-performance of a contract, then it might be extended to other character of contracts, and the law would be put in confusion.

There is no question, on the facts of this record, that the lumber company could have removed the timber at any time during the fourteen-year period. In the last renewal, of course, the question arises as to whether the lumber company honestly made an effort to remove the

timber, or whether it was making use of the appellee's land for the purpose of growing timber.

I think the judgment ought to be affirmed.

**McGehee, J.,** delivered the opinion of the court on suggestion of error.

It is again urged on suggestion of error that the appellant, Sumter Lumber Company, Inc., was not entitled to any relief under its bill of complaint in the court below, and especially as to a part of the timber involved for the reason that the deed from the Sumter Lumber Company, a corporation under the laws of Alabama, to the appellant, a corporation under the laws of Delaware, does not specifically describe in the list of timber lands attached as an exhibit thereto, two certain forty acre tracts of the timber embraced in the deed from J. Q. Skipper to the said Alabama corporation. We are of the opinion, however, that the language employed in the deed to appellant is sufficient to expressly convey all timber owned by its grantor in Kemper County, Mississippi. This is manifestly true, if any meaning or force is to be given to the provision therein to the effect that the particular description (referring to the exhibit) shall not be construed so as to limit the general description.

It would be of no avail to further discuss the other questions considered in the former opinions.

Suggestion of error overruled.