514 So.2d 329 (1987)
C.B. BRASHIER, Jr., Ralph C. Brashier, Arnold R. Brashier, J. Don Haynes, Wilma Hancock Haynes, Ralph V. St. John and John Player
v.
R.L. TONEY, et al.
No. 57024.
Supreme Court of Mississippi.
September 16, 1987.
Rehearing Denied November 18, 1987.
Otis Johnson, Jr. and Philip M. Reeves, Heidelberg, Woodliff & Franks, Jackson, for appellants.
Tally D. Riddell, Quitman, Nancy N. Morse, A. Jerry Sheldon, Gerald, Brand, Watters, Cox & Hemleben, and John Land McDavid, McDavid & Noblin, Jackson, for appellees.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:
We are called upon to interpret a mineral reservation in a warranty deed dated July 1, 1940. The language of the reservation created no controversy for a period of at least forty years. Only oil production created varying interpretations of the language; therefore, this action.
With little dispute as to the truth, competent counsel presented the evidence to the *330 learned chancellor. The interpretation of the evidence is the basis for the dispute. We believe the interpretation of the chancellor to be correct. To say the least in the chancellor's favor, he was not manifestly wrong and we will not disturb his findings.
The conduct giving rise to the dispute here commenced on November 24, 1939, when the Federal Land Bank conveyed real property in Clarke County to Hal Case with the following reservation:
The grantor reserves for a 25 year period beginning as of date hereof an undivided one-half interest in all oil, gas and all other minerals, except sand and gravel. Provided: if at the termination of the said 25 year period minerals herein reserved are being produced from, or mining or drilling operations for such minerals are being conducted on the said land, the above reservation will extend as long as production is obtained therefrom or mining or drilling operations are conducted thereon.
On January 25, 1940, Case conveyed to J.D. Haynes and C.B. Brashier a 1/3rd interest each in the subject property with language following the land description as follows: "less 1/2 the mineral interest retained by Federal Land Bank of New Orleans."
July 1, 1940, Haynes, Brashier and Case conveyed the land to J.E. Toney, Sr., by warranty deed with the following reservation:
Seven-eights (7/8ths) of all minerals in the above described property is hereby reserved from this conveyance, one-half (1/2) of the minerals being reserved and retained by the Federal Land Bank and there is hereby reserved and retained by each, C.B. Brashier, J.D. Haynes, and Hal Case, one-eighth (1/8) mineral, so that each grantor retains 1/8 minerals and there is conveyed hereby 1/8 mineral interest to J.E. Toney, Sr., with right of ingress and egress.
There was no production during the 25-year period; therefore the Federal Land Bank has no interest in the minerals. This is agreed to. It is further agreed that for a long period of time, twenty years or more, the heirs and assigns of Toney filed numerous instruments wherein their interest is set forth as 5/8ths, which of course includes a reversion from the Federal Land Bank. During the same period, the heirs and assigns of Case, Haynes and Brashier, by similar instruments, claimed a 3/8ths interest.
There was no dispute concerning the matter until a "roving land man" appeared on the scene in 1981 and informed an heir of Brashier that the 1/2 interest of Federal Land Bank reverted to Case, Haynes and Brashier, or their heirs and assigns, and not to Toney's successors.
It is not clear from the record who employed this "roving land man" but Ralph Brashier, heir of C.B. Brashier, admitted that the lawsuit was being financed by Plantation Royalty Company. The heirs and assigns of Case, Brashier and Haynes filed the action against the heirs and assigns of Toney seeking a declaratory judgment interpreting the mineral reservation in the July 1, 1940, deed from Case, Brashier and Haynes to Toney, Sr., and that the claim of the defendants be removed as a cloud on their title. Defendants answered and cross-claimed, asking that their title to the one-half interest represented by the Federal Land Bank reservation be confirmed. Numerous leaseholders were made parties to the lawsuit; however, it was stipulated that they were all neutral, took no adverse position, and did not participate in the trial of the action.
Also of interest is a Mineral Right and Royalty transfer executed by E.N. Kramer, Jr. to Ralph V. St. John and John Player on October 25, 1965,[1] wherein we find the following:
It is the intention of the grantor herein to convey and there is hereby conveyed to grantees all grantor's right, title and interest in and to all of the oil, gas and other minerals of every kind and character situated in the State of Mississippi, *331 that were acquired from the estate of Mrs. Nellie Case Kramer, deceased, by grantor's father, E.N. Kramer, Sr., deceased, whether correctly described or included in this conveyance or not;
At the time of the transfer, St. John and Player, now plaintiffs, accepted their interest to be 1/8th and accordingly purchased mineral stamps. It appears from the evidence that this advice came from the Honorable A.J. Reese, attorney, of Quitman, a longtime practitioner in Clarke County. Interestingly neither St. John, Player or any other plaintiff made any claim contrary to Mr. Reese's construction of instruments prior to the filing of this action.
Numerous other persons testified over the plaintiffs' objection as to the conduct of the various parties through the years. Witnesses included Ralph Brashier and Ralph St. John, called as adverse witnesses by the defendants and cross-complainants. Also appearing as defense witnesses were James Toney, Randy Plowden and Josie Britton. The testimony of these witnesses fully support the chancellor's finding that the plaintiffs had made no claim to the interest reserved by the Federal Land Bank. Ms. Britton, the former chancery clerk and deputy chancery clerk, knew Mr. Case and remembered him favorably as an attorney well learned in oil and gas law.
The chancellor found the July 1, 1940, deed to be ambiguous and allowed the parol evidence. This is assigned as error.
We agree with the chancellor that the instrument was indeed ambiguous and think it proper to receive parol evidence so that the construction thereof might be aided thereby.
First we would observe that the July 1, 1940, deed specifically states that a 1/2 interest was reserved and retained by the Federal Land Bank. The deed dated January 25, 1940, contained similar language. If we followed the plaintiffs' construction of the July 1, 1940, instrument, the heirs and assigns of Brashier and Haynes were not entitled to a reversion of the Land Bank interest, only the heirs and assigns of Case. However, we do not so hold. Common sense dictates that the possibility of reversion was split three ways. We think the chancellor was correct in his findings that the instrument in question was subject to numerous interpretations and that its ambiguity is obvious from the reading thereof.
First the reservation reserves a 7/8ths but then specifically states that each of the grantors, naming them, owns a 1/8th. They expressly conveyed 1/8th, expressly reserving a total of 3/8ths. We, therefore, agree, as the chancellor stated, that the mention of the Federal Land Bank's interest was to protect the grantors' warranty and that the instrument neither conveyed, reserved nor excepted the possibility of a reverter in 1/2 of the minerals. The plaintiff/appellants would have the Court look at only the language reserving 7/8ths and the conveyance to Toney of a 1/8th. This we can not do when the express language they chose to use was that they reserved to themselves only a 1/8th interest each.
We hold that the instrument was ambiguous and that the evidence was admissible for the purpose of explaining it. Sumter Lumber Co., Inc. v. Skipper, 183 Miss. 595, 184 So. 296 (1938). The record reveals that Mr. Case was a learned attorney and undoubtedly if he had desired to reserve the possibility of reverter he would have used the proper language, reserving 7/8ths with nothing further said. We think it proper and equitable to place the construction on the deed that has been placed thereon by the parties. Richardson v. Moore, 198 Miss. 741, 22 So.2d 494 (1945). The interpretation of the parties is practical and, as the chancellor we give much weight thereto.
The appellants cite numerous authorities to the effect that when a written instrument is clear, definite, explicit, harmonious in all of its provisions, and free from ambiguity, the Court shall look to the instrument only, citing among other cases Pfisterer v. Noble, 320 So.2d 383 (Miss. 1975). The problem with such argument is that the instrument here has no such character. We make no claim to expertise in sentence structure. However, one more versed than we, upon noticing the comma after the *332 word "conveyance", might well construe the language to mean nothing more than a recognition on the part of the grantors that the Federal Land Bank had a 1/2 interest and they were without power to convey. The conduct of the parties support this and we will confirm their actions and hold that the clause in controversy merely operated to protect the grantors' warranty of title. Miller v. Lowery, 468 So.2d 865 (Miss. 1985).
The exhibits here, with attached mineral documentary stamps, disclose that all of the parties thought the interest of Toney, heirs and assigns, was 5/8ths, and that of the plaintiffs was 3/8ths. According to Ralph Brashier, a plaintiff, he knew nothing of the Federal Land Bank reservation until "the land man" conveyed the information to him. Therefore, we believe that common sense dictates that we leave the parties where they thought they were. Sumter Lumber Co., Inc. v. Skipper, supra, supports this position with the following language:
The rules for the construction of deeds or contracts are designed to ascertain and follow the actual or probable intention of the parties, and are: When the language of the deed or contract is clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout, the court looks solely to the language used in the instrument itself, and will give effect to each and all its parts as written. When, however, the language falls short of the qualities above mentioned and resort must be had to extrinsic aid, the court will look to the subject matter embraced therein, to the particular situation of the parties who made the instrument, and to the general situation touching the subject matter, that is to say, to all the conditions surrounding the parties at the time of the execution of the instrument, and to what, as may be fairly assumed, they had in contemplation in respect to all such said surrounding conditions, giving weight also to the future developments thereinabout which were reasonably to be anticipated or expected by them; and when the parties have for some time proceeded with or under the deed or contract, a large measure, and sometimes a controlling measure, of regard will be given to the practical construction which the parties themselves have given it, this on the common sense proposition that actions generally speak even louder than words.
Sumter, 183 Miss. at 608-09, 184 So. at 298-99.
Finally, we again note that Mr. Hal Case was an attorney and, insofar as this record is concerned, well able to attend to his business. We think the controversy must be resolved against the grantors. This is a well settled rule. Castle v. Harkins and Co., 464 So.2d 513 (Miss. 1985); Ouber v. Campbell, 202 So.2d 638 (Miss. 1967); Baker v. Columbia Gulf Transmission Co., 218 So.2d 39 (Miss. 1969).
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Kramer's father married Case's widow and after the death of his father and stepmother he became the owner of the Case interest.