# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00173-SCT

*PHYLLIS MANESS AND JAMES A. MANESS*

*v.*

*K & A ENTERPRISES OF MISSISSIPPI, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/2017 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| TRIAL COURT ATTORNEYS: | MICHAEL J. CASANO |
| | JIMMY D. McGUIRE |
| | R. WAYNE WOODALL |
| | HAROLD W. DUKE |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOHN H. DUNBAR |
| ATTORNEY FOR APPELLEE: | NICHOLAS VAN WISER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 02/08/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     K&A Enterprises of Mississippi, LLC, filed suit against Phyllis and James Maness for

breach of contract.  The claim arose from Phyllis and James Maness's termination of the

Option Contract between the parties.  K&A Enterprises of Mississippi, LLC, alleged that

Phyllis and James Maness failed to provide clear title, and in response, Phyllis and James

Maness filed a Counterclaim for Declaratory Judgment.  K&A Enterprises of Mississippi,

LLC, filed a Partial Motion for Summary Judgment on Liability, a Partial Motion for

Summary Judgment on Damages, and a Motion to Dismiss the Counterclaim, or in the alternative, for Summary Judgment. The trial court granted all three motions, denied the subsequent motions for reconsideration, and the Manesses appealed. For the reasons expounded upon herein, the Court affirms.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     Phyllis and James Maness (the Manesses) entered into an Option Agreement for Purchase of Real Estate (Option Contract) with K&A Enterprises, LLC (K&A) on May 7, 2004. Under the contract, K&A had an option to purchase "Lots 13, 14, 15 and 16, Block 110, GULFVIEW SUBDIVISION, Lakeshore, Hancock County, Mississippi" for $1,000,000 to be paid over a period of time with interest payments, and the option was extended for one year. The Option Contract also provided a specific subsection on the Manesses' duty to cure title defects; it stated:

> **Cure of Title Defects**. Optionors shall have thirty (30) days from notice by the Optionees of any title defects to cure such defects, unless curative measures require action by a public entity or a court of law. In that event, the thirty (30) day limit shall not apply, but Optionors shall be obligated to pursue diligently and in good faith all necessary filings and application necessary to cure title.

¶3.     On April 25, 2005, K&A and the Manesses executed the "Notice of Exercise of Option," whereby K&A accepted and exercised the Option Contract. The Notice included a paragraph stating that K&A was giving notice to the Manesses of the cloud on the title caused by the inclusion of a piece of the property on a deed with an unrelated party, Eric Nelson.

2

¶4.    On June 15, 2005, Amy Gillespie Smith provided a letter detailing title issues with the subject property.  In the record on appeal, the letter is missing the second page, and K&A states that it is not in possession of the second page.  Regardless, it is clear that the letter covered two issues that clouded the title.  It mentioned the Dynasty Lawsuit and the Walker Avenue issue.  Further, K&A maintains that the subsequent Orgler Report[1] makes the Smith letter clear.

¶5.    The Dynasty Lawsuit was filed by the Manesses in 2006 and is styled: Maness v. Dynasty, Inc., et al.  According to the complaint, the lawsuit covered three main issues.

¶6.    The first issue is the lack of the "less and except" language in a subsequent deed.  In 1998, Dynasty began acquiring property adjacent to Block 110 in the Gulfview Subdivision. The deed to Dynasty excluded the Manesses' property[2] by including a clause stating that the property sold was "less and except" the Manesses' property.  Dynasty then conveyed its property to Eric Nelson.  The deed between Dynasty and Nelson failed to contain the "less and except" provision.  Therefore, the deed included the Manesses' property, and the same property also is included as part of the property being sold under the Option Contract.

¶7.    The second issue in the lawsuit is a cause of action to quiet and confirm title for the part of the Manesses' property that was obtained through adverse possession. The adversely possessed  property was generally[3] described as the following, "A parcel of land situated in

---

[1]Mark Orgler provided a second title opinion in January 2010, covering the Dynasty Lawsuit and the Walker Avenue dedication issue.

[2]The Maness property was garnered through adverse possession.

[3]The complaint also contains the metes-and-bounds description of the property.

part of Blocks 110 and 111, GULFVIEW SUBDIVISON, Lakeshore, Hancock County . . . ." Further a second parcel is described generally[4] as the following, "A parcel of land located in Block 111, GULFVIEW SUBDIVISON, Lakeshore, Hancock County, Mississippi and also part of Walker Avenue . . . ."

¶8. The third issue in the lawsuit is the Walker Avenue dedication. Walker Avenue was included on surveys of the Gulfview Subdivision, and it was dedicated to Hancock County. Subsequently, the Board of Supervisors attempted to vacate the portion of Walker Avenue that ran through the subdivision. However, it was never done properly because newspaper publication was required.

¶9. Turning back to the instant suit, due to the "less and except" issue (as covered in the Dynasty Lawsuit), the Smith title opinion and later two additional title opinions concluded that it clouded the title. Further, due to the Walker Avenue dedication issue (as covered in the Dynasty Lawsuit), the Smith title opinion and an additional title opinion concluded that there was a second cloud on the title.

¶10. On July 15, 2005, the parties entered into a Modification of the Option Contract [July 2005 Modification], whereby they agreed that K&A would stop making interest payments due to the "lack of clear title." Further, it provided that the parties understood that the matter was in litigation, and there was "no merchantable title." On March 27, 2007, Dynasty Inc., Dynasty Limited, Eric Nelson and his company, LSN Nevada Trust, signed a quitclaim deed

---

[4]The complaint also contains the metes-and-bounds description of the property.

conveying the "less and except" property to the Manesses. The quitclaim deed did not address the Walker Avenue dedication issue.

¶11.   Thereafter, K&A began making interest payments again. The payments continued until August 2009. According to K&A, it was eventually discovered that the quitclaim deed did not fix the title issues. Further, the Manesses continued to litigate the *Maness v. Dynasty, et al.* suit. The Manesses then terminated the agreement with K&A on September 8, 2009. The termination letter stated that "this action is based primarily upon [K&A's] failure to remit funds."

¶12.   K&A filed suit against the Manesses on April 21, 2010. They alleged that the Manesses unilaterally terminated the contract and breached the contract by failing to provide merchantable title and failing to pursue it diligently, despite K&A's paying approximately $479,941.04 over the life of the contract. K&A alleged $479,941.04 in damages. In response, the Manesses answered and filed a Counterclaim for declaratory relief. The Counterclaim requested that the court enter a declaratory judgment adjudicating that all agreements between K&A and the Manesses have been terminated. Further, they alleged that K&A collected rent, and the declaratory judgment should require K&A to "disgorge any funds wrongfully withheld by it . . . ."

¶13.   K&A filed a Partial Motion for Summary Judgment on Liability, a Motion to Dismiss the Counterclaim Pursuant to Rule 12 or, in the alternative, for Partial Summary Judgment, and a Partial Motion for Summary Judgment on Damages. After oral argument on each motion, the trial court granted all three motions, and denied the Motions for Reconsideration.

The cumulative effect of the trial court's grant of all three motions amounted to a final disposition regarding all issues of the case. The Manesses appealed.

**STATEMENT OF THE ISSUES**

¶14. The parties have styled the issues around the three rulings of the trial court: the grant of partial summary judgment on liability and denial of the motion for reconsideration, the grant of partial summary judgment on damages and denial of the motion for reconsideration, and the dismissal of the counterclaim. Due to the volume of arguments made for each ruling of the trial court, the issues and subissues remain divided by the three rulings of the trial court.

**I.     The Motion for Partial Summary Judgment on Liability**

    **(A)   Whether K&A, the movant, successfully illustrated the absence of a genuine issue of material fact as to liability.**

        **(I)    Whether the Option Contract and July 2005 Modification were ambiguous.**

        **(ii)   Whether the quitclaim deed cured the title issues.**

        **(iii)  Whether the Manesses' need to cure had a deadline**.

        **(iv)   Whether the course of conduct of the parties can be considered**.

        **(v)    Whether K&A failed in its burden on summary judgment.**

    **(B)   Whether the trial court abused its discretion in failing to grant the motion for reconsideration.**

**II.    The Motion for Partial Summary Judgment on Damages**

   **(A)    Whether K&A, the movant, successfully illustrated the absence of a genuine issue of material fact as to damages.**

   **(B)    Whether the trial court abused its discretion in failing to grant the motion for reconsideration.**

**III.   The Dismissal of the Counterclaim under Rule 12.**

## ANALYSIS

**I.    The Motion for Partial Summary Judgment on Liability**

   **(A)    Whether K&A, the movant, successfully illustrated the absence of a genuine issue of material fact as to liability.**

¶15.   On appeal, the grant or denial of a motion for summary judgment is reviewed de novo, viewing the evidence "'in the light most favorable to the party against whom the motion has been made.'" ***Karpinsky v. Am. Nat'l Ins. Co.***, 109 So. 3d 84, 88 (Miss. 2013) (quoting ***Pratt v. Gulfport–Biloxi Reg'l Airport Auth.***, 97 So. 3d 68, 71 (Miss. 2012)). Summary judgment is proper when the "'pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" ***Karpinsky***, 109 So. 3d at 88 (quoting Miss. R. Civ. P. 56(c)).

¶16.   The movant bears the burden of persuasion, "persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law." ***Karpinsky***, 109 So. 3d at 88 (internal quotation omitted). Further, if at trial, the movant would bear the burden of proof, he also bears the

7

burden of production at summary judgment. *Id.* However, the nonmovant may not sit ideally nor "rest upon the mere allegations or denials of his pleadings." Miss. R. Civ. P. 56(e). The nonmovant must respond "by affidavit or as otherwise provided in [Rule 56]," and he "must set forth specific facts showing that there is a genuine issue for trial." *Id.* Further, "[i]f he does not so respond, summary judgment, if appropriate, will be entered against him." *Id.*

¶17. Here, K&A bore the burden of persuasion and the burden of production, as it would bear the burden of proof at trial. *See **Karpinsky***, 109 So. 3d at 88. In support of the Partial Motion for Summary Judgment on Liability, K&A produced the following documents: the Option Contract between the parties, the April 25, 2005, Notice to the Manesses of K&A's exercise of the option, the Smith Report[5] issued in June of 2005, the July 2005 Modification, the Manesses' termination of the Option Contract, the Orgler Report, the Manesses' Response to the Requests for Admissions, the Second Amended Complaint in *Maness v. Dynasty, Inc. et al.*, and finally, the Motion for Partial Summary Judgment in *Maness v. Dynasty, Inc,. et al.* Further, at the hearing, K&A also submitted an expert report of John Howard Shows.

¶18. In response, at the summary judgment hearing, the Manesses offered the quitclaim deed that they argued cleared up and removed the cloud from the title. The Manesses then argued that a number of issues of material fact were left unresolved. On appeal, the Manesses address some of the arguments made before the trial court, and they raise a couple

---

[5] The Smith Report is two pages long, but it should be three pages long. It is missing a page, and K&A explained in its brief that this page remains missing but the contents of it are clear due to the Orgler Report.

8

of new arguments. For clarity and conclusiveness, the arguments of the Manesses are detailed in the subsections below.

### (I) Whether the Option Contract and July 2005 Modification were ambiguous.

¶19. The Manesses argue that the Option Contract and the July 2005 Modification were ambiguous as to their duty to clear title. This argument was not made at the trial-court level. Therefore, the Manesses argue that it rises to plain error.

¶20. "This Court has repeatedly held that a trial judge will not be found in error on a matter not presented to the trial court for a decision." *Purvis v. Barnes*, 791 So. 2d 199, 203 (Miss. 2001). Further, "[i]t is well established that this Court does not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs." *Weiner v. Meredith*, 943 So. 2d 692, 696 (Miss. 2006) (internal quotation omitted). However, under the Mississippi Rules of Evidence, when a substantial right is affected, plain error may be considered by an appellate court. Miss. R. Evid. 103(f). This means:

> The Court will ignore [the] requirement [of] preservation on appeal when a substantial right is affected. This Court retains the power to notice plain error. The plain error doctrine reflects a policy to administer the law fairly and justly. A party is protected by the plain error rule when (1) he has failed to perfect his appeal and (2) when a substantial right is affected.

*State Highway Comm'n of Mississippi v. Hyman*, 592 So. 2d 952, 957 (Miss. 1991) (internal citations omitted). The error also must be a deviation from a legal rule by the trial court that is plain, clear, obvious, and has prejudiced the outcome of the trial. *See McGee v. State*, 953 So. 2d 211, 215 (Miss. 2007). The plain-error doctrine is nearly always applied

in the criminal context, but there is no bar to applying it in a civil case. *See Alpha Gulf Coast, Inc. v. Jackson*, 801 So. 2d 709, 728 (Miss. 2001); *Univ. of Miss. Med. Ctr. v. Peacock*, 972 So. 2d 619, 637 (Miss. Ct. App. 2006).

¶21. "It is a question of law for the court to determine whether a contract is ambiguous and, if not, enforce the contract as written." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 751 (Miss. 2003). "If the terms of the contract are subject to more than one reasonable interpretation," the contract is considered ambiguous. *Id.* at 752.

¶22. Here, based on the language of the Option Contract and July 2005 Modification, the Court holds them to be unambiguous. The Manesses had a duty to provide clear title, and K&A's obligation to resume payments was conditioned upon the performance of the Manesses. Thus, the trial court did not deviate from any legal rule by not addressing the ambiguity of the contracts because the ambiguity of the contracts was not plain, clear, or obvious. Further, the outcome of the case is not prejudiced.

### (ii) Whether the quitclaim deed cured the title issues.

¶23. Next, the Manesses argue that the quitclaim deed offered proof that they performed their duty to cure the title issue, and therefore, summary judgment was not warranted. For the reasons explained below, the Court holds that it is undisputed that the quitclaim deed did not cure the title issues; therefore, this issue is moot.

10

¶24.    First, the Manesses' response to the First Request for Admission for the instant case—which was signed well after they terminated the Option Contract in 2009 and well after the quitclaim deed[6]—, states the following:

> **REQUEST NO. 10:**  Admit that you own the property that is the subject of Option Agreement for Purchase of Real Estate Attached as Exhibit "A" to the Complaint.
>
> **RESPONSE:**  Admitted, *except for those parcels which are the subject of an action for Adverse Possession currently before the Chancery Court of Hancock County, Mississippi*.

¶25.    It appears the lawsuit the Manesses refer to above is *Maness v. Dynasty Inc., et al.* And, completely inapposite to this request-for-admission response, in their reply brief before the Court, the Manesses argue the following: "[K&A] did not attempt to rebut the Manesses ['] argument that there is no evidence to dispute their continuous and completed adverse possession of their land–they have 'full and complete' title, for that reason." Considering these two points, *how can K&A have full and complete title when the Manesses admitted that they did not even own the property at issue due to adverse possession?*

¶26.    Requests for admission are governed by Mississippi Rule of Civil Procedure 36. "Any matter admitted under [Rule 36] is conclusively established unless the court on motion permits withdrawal or amendment of the admission."  Miss. R. Civ. P. 36.  Thus, the response to the Request for Admission conclusively establishes that the Manesses' property at issue in  *Maness v. Dynasty Inc., et al.*, is not free or clear *or even in existence*, which is troubling.

---

[6]The quitclaim deed was signed in 2007.

11

¶27.   Second, aside from the response to the Request for Admission, as argued by K&A, the Manesses' representations in *Maness v. Dynasty Inc., et al.,* create an issue of equitable estoppel.  The Manesses filed *Maness v. Dynasty Inc., et al.,* arguing that *an action from the court was required to quiet and confirm title* for three reasons: (1) subsequent conveyances (after the Dynasty deed) failed to exclude the Manesses' property at issue; (2) adverse possession of land in part of Blocks 110 and 111; and (3) the Walker Avenue dedication was not clear whether the rights of the public had been extinguished.  Further, the Manesses filed a Motion for Summary Judgment in *Maness v. Dynasty Inc., et al.* arguing that the quitclaim deed[7] did not clear the title issues.  Further, they pointed out that Dynasty Inc. was not in existence when it signed the quitclaim deed in 2007, and Dynasty Limited had been dissolved when it signed the quitclaim deed in 2007.  The *Manesses* concluded that the quitclaim deed was void and had no effect.

¶28.   Yet, despite the issues they outlined in *Maness v. Dynasty Inc., et al.,* on appeal here, they argue that *Maness v. Dynasty Inc., et al.,* does not affect the title's merchantability because the Manesses' property was excluded under the "less and except" clause and was never conveyed to Dynasty, and the point of *Maness v. Dynasty Inc., et al.,* was to confirm their own title, not establish merchantability.

---

[7]The Manesses identified the quitclaim deed in the Dynasty Lawsuit Motion for Summary Judgment as the quitclaim deed by the grantors (Dynasty, Inc., Dynasty Limited, Eric L. Nelson, and LSN Nevada Trust) and by the date it was filed (April 5, 2007). This description matches the quitclaim deed at issue in the instant case.  However, the parties failed to place the exhibits to the Dynasty Lawsuit Summary Judgment Motion in the instant record on appeal.

¶29.    "[E]quitable estoppel may be enforced in those cases in which it would be substantially unfair to allow a party to deny what he has previously induced another to believe and take action on." **PMZ Oil Co. v. Lucroy**, 449 So. 2d 201, 207 (Miss. 1984). Equitable estoppel is a rule rooted in equity that derives from the "[f]raudulent intent to mislead." **Id.** However, fraud is not required for equitable estoppel to be applied. **Id.**

¶30.    In *Maness v. Dynasty Inc., et al.*, the Manesses themselves argued that an order from the court was needed to quiet and confirm title. K&A then relied upon the Manesses' argument to their detriment because the Manesses then terminated the Option Contract. The Manesses cannot now argue that there was never a cloud on the title, or that the title was merchantable. The Court holds that they are equitably estopped from claiming that the quitclaim deed fixed the issues and that the title was merchantable.

¶31.    Third, K&A provided two title reports —the Orgler Report and the Smith Letter— and an expert report—The John Howard Shows Expert Report—to the trial court detailing title issues. The two title reports and the expert report were considered by the Court, and the Manesses did not object to entering them into evidence. In their brief, the Manesses state that the reports were valid summary-judgment evidence,[8] but they take issue with the content of the reports, arguing that the reports failed to contain a legal test. Further, with regard to the Walker Avenue dedication issue, the Manesses argue that the expert reports fail to show

---

[8]Therefore, the Court need not consider whether the expert report and the title reports were presented in the correct form for summary-judgment evidence. *See* **Hill v. Consumer Nat'l Bank**, 482 So. 2d 1124, 1128 (Miss. 1986) (considering the specific evidence allowed for summary judgment, stating that it must be "facts sworn to on personal knowledge in depositions, answers to interrogatories or affidavits . . . ").

a genuine issue, as they fail to address the abandonment of the dedication, nonuse of the road, and failure of it to appear on the official road system.

¶32.  All three reports address the issue of successive deeds failing to exclude the Maness property at issue, and all three reports conclude that the title was not clear or merchantable. Specifically, the Orgler Report and the Smith Letter address the Walker Avenue issue, as well. Further, the Shows Report notes that Dynasty, Inc., was not a validly formed Mississippi corporation until 2010, and Dynasty Limited was dissolved in 2003.[9]

¶33.  The Manesses unambiguously were bound by the Option Contract and the July 2005 Modification to cure title defects. The expert reports established that all of the defects were not cured by the quitclaim deed, and the Manesses failed to *file* anything to contradict the reports, specifically a competing expert report or a ***Daubert***[10] motion challenging the reports. *See* Miss. R. Civ. P. 56(e) (The nonmovant may not sit idly nor "rest upon the mere allegations or denials of his pleadings.").

¶34.  Finally, throughout their brief, specifically in regard to the effect of the quitclaim deed, the Manesses maintain that the title was merchantable. They state that it was merchantable because a "title insurer would except [sic] the [t]itle [q]uestions." Further, they state that a "stranger to the chain-of-title" does not render the title unmerchantable. This argument also fails. The three title reports (to which the Manesses failed to properly respond) conclude that the defects made the property unmerchantable. But, more

_____

[9]The quitclaim deed was signed by both companies in 2007.

[10]***Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

14

importantly, the Manesses were bound by the Option Contract and the July 2005 Modification to *cure* the title defects, and it is undisputed that the quitclaim deed did not cure the title defects. A failure to cure constitutes a material breach. ***Ferrara v. Walters***, 919 So. 2d 876, 883 (Miss. 2005).

¶35. Thus, based on the response to the Request for Admission, equitable estoppel, the expert reports, and the plain language of the Option Contract and July 2005 Modification, the quitclaim deed does not create a genuine issue of material fact. It is undisputed that the quitclaim deed did not cure the title issues, and therefore, the instant issue is moot.

### (iii)    Whether the Manesses' need to cure had a deadline.

¶36. The Manesses also argue that their performance never had a deadline; therefore, there is no proof they breached. This argument once again was not brought before the trial court. Therefore, it must rise to the level of plain error to be considered or appeal, and it fails. As stated above, when the Manesses terminated the Option Contract, a cloud still existed on the title. Therefore, any argument that the Manesses did or did not cure the title issues on time is immaterial and moot.

### (iv)    Whether the course of conduct of the parties precludes summary judgment.

¶37. As they argued before the trial court, the Manesses also contend that the course of conduct of the parties should be considered as proof that the quitclaim deed cleared the title issue because, after the quitclaim deed, K&A made payments to the Manesses before stopping again. The Manesses point to the following rule for this argument:

(W)hen the parties have for some time proceeded with or under the deed or contract, a large measure, and sometimes a controlling measure, of regard will be given to the practical construction which the parties themselves have given it, this on the common sense proposition that actions generally speak even louder than words.

*Moore v. Kuljis*, 207 So. 2d 604, 612 (Miss. 1967) (quoting *Sumter Lumber Co. v. Skipper*, 184 So. 296, 298 (Miss. 1938)).

¶38.    The course-of-conduct argument fails as a matter of law for a number of reasons. First, the Manesses failed to present any evidence that there was a course of conduct after the quitclaim deed.  At oral argument, they asked the judge to deny summary judgment *to allow them to present such evidence*.  They stated: "And so for that, again, I believe that there is an issue there that we should be able to put on proof that shows the course of conduct between the parties indicated that they were continuing under the terms of that agreement . . . ." However, at the summary-judgment stage, once again, they brought forth no proof, only argument of counsel.  *See* Miss. R. Civ. P. 56(e) (The nonmovant may not sit idly nor "rest upon the mere allegations or denials of his pleadings.").

¶39.    Second, the rule cited by the Manesses as support for their course-of-conduct argument arises from a contract that was held to be ambiguous.  The *Skipper* Court specifically stated that "[w]hen the language of the deed or contract is clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout, the court looks solely to the language used in the instrument itself, and will give effect to each and all its parts as written." *Skipper*, 184 So. at 298; *see also Heritage Cablevision v. New Albany Elec. Power Sys. of City of New Albany*, 646 So. 2d 1305, 1313 (Miss. 1994) ("Only if the contract is

16

unclear or ambiguous can a court go beyond the text to determine the parties' true intent."). Thus, the actions of the parties are considered only if the contract is ambiguous.

¶40. Here, the Option Contract and July 2005 Agreement are held to be unambiguous. Therefore, the *Skipper* rule does not apply. Further, it is worth noting that it is clearly inequitable to render a quitclaim deed with the intent to restart K&A's payments, when the quitclaim deed, although it purported to fix the title issues, never fixed them.

### (v) Whether K&A failed in its burden on summary judgment.

¶41. The Manesses finally conclude that they "had no burden to produce any evidence against the motion for partial summary judgment, unless and until [K&A] had shown the absence of a genuine issue on every essential element of the Plaintiff's claim . . . ." The Manesses fail to point out the "essential element[s]" that K&A fails to address, and the Court holds no elements to be missing.

¶42. A breach-of-contract case has two elements: (1) "the existence of a valid and binding contract," and (2) a showing "that the defendant has broken, or breached it." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012).[11] "A breach is material where there is 'a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats [the purpose of the contract].'" *Ferrara v. Walters*, 919 So. 2d 876, 886 (Miss. 2005) (quoting *Gulf South Capital Corp. v. Brown*, 183 So. 2d 802, 805 (Miss. 1966)). In *Ferrara*, the sellers failed to cure a title issue and then terminated the contract with the original buyer. *Ferrara*, 919

---

[11]Monetary damages are not an element of a breach-of-contract claim, but a remedy for breach of contract. *Banks*, 90 So. 3d at 1225.

So. 2d at 880. The Court held in favor of the buyer, stating that the sellers were bound "to correct the defects in title and to render to [the buyer] that which he bargained for under the contract . . . ." *Id.* at 886. Specifically, it held that "where a contract expressly provides a reasonable opportunity for the seller to cure discovered defects in title, the seller's failure to cure constitutes a material breach of the contract." *Id.* at 883.

¶43.    Here, there is no issue that the Option Contract was a valid and binding contract. Further, at the time that the Manesses unilaterally terminated the contract, they had not cured the title issue. Therefore, like in *Ferrara*, the Manesses had a duty to provide clear title, and they could not terminate the contract, having failed to uphold their end of the contract. Thus, they were in material breach at the time of the termination for failing to provide clear title, and there are no "essential elements" missing from K&A's summary-judgment argument.

¶44.    In summary, K&A, the movant, successfully illustrated the absence of a genuine issue of material fact as to liability. K&A presented enough evidence to sustain its burden of persuasion and production and show that, at the time of termination, the Manesses had failed to cure the title issue that was required under the Option Contract and under the July 2005 Modification. In response, the Manesses presented only the quitclaim deed. The quitclaim deed did not create a disputed issue of material fact, because the evidence presented by K&A and the record before the Court unequivocally establish that the quitclaim deed failed to cure all of the title issues. Specifically, the pleadings from *Maness v. Dynasty Inc., et al.*, the Manesses' own response to the Request for Admission, and three title reports proved that the quitclaim deed was inadequate to cure the title issues. If the Manesses needed more time for

18

discovery, they should have made such a motion, but the record does not contain a motion for additional time to conduct discovery. Therefore, the Manesses failed in their burden on summary judgment, and the Court affirms the trial court's grant of the Partial Motion for Summary Judgment on Liability.

**(B)** **Whether the trial court abused its discretion in failing to grant the motion for reconsideration.**

¶45. The Manesses argue that the trial judge erred by considering their "Motion to Strike the Order Granting Plaintiff's Motion for Partial Summary Judgment" as a Rule 59(e) motion, instead of a Rule 54(b) Motion for Reconsideration. *See* Miss. R. Civ. P. 54(b), 59(e). The Manesses cite a recent Fifth Circuit opinion to argue that a Rule 54(b) motion is the correct standard when not all of the claims have been disposed of by the original motion, for which the reconsideration is sought. *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017). K&A maintains that the Manesses utterly failed to bring forth any probative evidence refuting the evidence submitted by K&A.

¶46. The grant or denial of a motion for reconsideration is reviewed under an abuse-of-discretion standard. *City of Jackson v. Internal Engine Parts Grp., Inc.*, 903 So. 2d 60, 66 (Miss. 2005) ("Review of a trial judge's denial of a Rule 59 motion is limited to abuse of discretion."). For the reasons stated below, the Court holds that the trial judge did not abuse his discretion in denying the Motion for Reconsideration.

¶47. *Cabral* is based on the Federal Rules of Civil Procedure, and the *Cabral* Court found that the difference between a Rule 59 motion or a Rule 54 motion was harmless. It held that Rule 59 carried a "standard more exacting" than that of Rule 54. *Cabral*, 853 F.3d at 766.

19

Therefore, filing a motion under Rule 59 encompasses the standard of filing a motion under Rule 54, and it is not reversible error.

¶48. Further, the Manesses' actions illustrate that they intended their motion to be a Rule 59 motion. They originally styled the motion as a Motion to Strike the Order, but then they later filed a "Supplement Motion for *Reconsideration*." (Emphasis added.) The supplement illustrates that the Manesses' original motion was filed under Rule 59.

> The trial court found in his Order denying the motion that the Manesses failed to present any evidence to this Court to create a genuine issue of material fact regarding the Defendant's breach of the contract. Nothing before the Court on reconsideration demonstrates an intervening change in controlling law, the availability of new evidence not previously available, or need to correct a clear error of law or prevent manifest injustice.

Upon the Court's review of the record and the arguments on appeal, the trial judge did not abuse his discretion in denying the motion for reconsideration. ***Internal Engine Parts Grp., Inc.***, 903 So. 2d at 66. The Manesses presented nothing that satisfied any of the grounds for the motion for reconsideration to be granted. The Manesses merely wanted another bite at the apple, which is not the point of a motion for reconsideration.

## II. The Motion for Partial Summary Judgment on Damages

### (A) Whether K&A, the movant, successfully illustrated the absence of a genuine issue of material fact as to damages.

¶49. As stated above, the grant or denial of a motion for summary judgment is reviewed *de novo*. ***Karpinsky***, 109 So. 3d at 88. Further, here, the movant bears the burden of "persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law," and production.

20

*Id.* (internal quotation omitted). In response, the nonmovant must respond, "by affidavit or as otherwise provided in [Rule 56]," and he "must set forth specific facts showing that there is a genuine issue for trial." Miss. R. Civ. P. 56. Further, "[i]f he does not so respond, summary judgment, if appropriate, will be entered against him." *Id.*

¶50. In support of its Partial Motion for Summary Judgment on Damages, K&A submitted the Second Request for Admissions that it had propounded to the Manesses, and the Manesses had not timely answered. K&A argued that the Second Requests for Admission was, therefore, deemed admitted. The Second Requests for Admission covered the amounts paid by K&A to the Manesses under the Option Contract. K&A also submitted copies of the checks and a handwritten log of payments. The amount came to $457,435.52. The Manesses filed a response arguing that "[s]imply because [the] Second Requests for Admissions were not timely answered and deemed admitted, does not necessarily make the facts alleged therein true." Further, they filed no additional documents in the form of affidavits or otherwise in support of their arguments. Specifically, they filed nothing in support of their argument that the nature of the payments was in question.

¶51. The trial court held that the Requests for Admission were deemed admitted under Rule 36 of the Mississippi Rules of Civil Procedure, and it pointed out that requests for admission had been recognized as a means to establish causation and damages. Further, in granting the Partial Motion for Summary Judgment on Damages, it noted that the Manesses had failed to produce anything to support their arguments.

¶52.    On appeal, the Manesses make three arguments that the Motion for Partial Summary Judgment on Damages should not have been granted. First, the Manesses cite ***ARD, LLC v. Trulite Glass & Aluminum Sols., LLC***, 195 So. 3d 867, 871-72 (Miss. Ct. App. 2016), to argue that the Requests for Admission are insufficient to prove the payments were caused by the alleged breach.    K&A argues that the deemed-admitted Requests for Admission conclusively established the appropriate amount of damages under the remedy of recession of the contract.

¶53.    In ***ARD, LLC***, the issue was whether a relationship of privity existed between the party seeking damages and the party from whom damages were sought.  That is not an issue in the instant case; therefore, ***ARD, LLC*** is not applicable.  ***ARD, LLC***, 195 So. 3d at 871-72. Further, monetary damages are a remedy for breach of contract, not an element of it. ***Banks***, 90 So. 3d at 1225.

¶54.    The Manesses next argue that K&A failed to establish conclusive proof of the damages by providing mere proof of the payments.  K&A argues that the Manesses failed to present any evidence to contradict the evidence presented by K&A.

¶55.    As discussed in the sections above, the grant of the Partial Summary Judgment on Liability inherently established a material breach.  The remedy can come in the form of specific performance or monetary damages.  The Court has expressed restraint in allowing parties to exercise termination of a contract. ***Ferrara v. Walters***, 919 So. 2d 876, 886 (Miss. 2005) ("Absent other lawful reasons why the contract should not be enforced, we conclude that the parties are bound to perform pursuant to the terms of their agreement."); *see also*

22

***UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.,*** 525 So. 2d 746, 756 (Miss. 1987) ("Termination is permitted only for a material breach."). However, the Court has expressed general acceptance of monetary damages as a remedy. ***Banks***, 90 So. 3d at 1225 ("Monetary damages are a remedy for, not an element of, breach of contract."). Further, the Court has stated:

> [T]he Court's purpose in establishing a measure of damages for a breach of contract is to put the injured party in the position where she would have been but for the breach. However, this Court has never contemplated that an injured party be placed in a better position than she would have been had the contract been performed.

***Wilson v. Gen. Motors Acceptance Corp.***, 883 So. 2d 56, 66 (Miss. 2004) (internal quotation omitted).

¶56. Here, the termination of the contract and monetary damages were the correct remedy. When the Manesses terminated the Option Contract, they were in material breach, because a cloud still existed on the title, and based upon the record before the Court, the cloud on the title *still* remains today. Thus, due to the material breach, the court's termination of the contract and award of monetary damages was appropriate. *See **UHS-Qualicare, Inc.***, 525 So. 2d at 756. Further, the damages awarded represent the exact amount of money paid by K&A in the form of purchase price and interest payments over the life of the contract: $457,435.52. This, in the face of a contract termination, is the correct amount of monetary damages. The damages should be the amount that would place the nonbreaching party "in the position where [it] would have been but for the breach," no more and no less. ***Wilson***,

23

883 So. 2d at 66. Thus, without any evidence from the Manesses to the contrary, the money paid by K&A under the contract conclusively established damages.

¶57. Lastly, the Manesses again make the course-of-conduct argument. This argument is without merit, because, as stated *supra* on the Motion for Partial Summary Judgment on Liability, the Manesses' Option Contract and July 2005 Modification were unambiguous. Therefore, the course of conduct of the parties is not considered.

¶58. Thus, for all of the above-described reasons, the Court affirms the grant of the Partial Motion for Summary Judgment on Damages. K&A conclusively established its form and amount of damages, and the Manesses failed to uphold their burden of presenting any proof in response.

### (B) Whether the trial court abused its discretion in failing to grant the motion for reconsideration.

¶59. The Manesses filed a Motion to Reconsider Order Granting Plaintiff's Motion for Summary Judgment on Damages, and the trial court denied it. In their brief, the Manesses bring forth the same arguments they made in the Motion for Reconsideration regarding the Partial Motion for Summary Judgment on Liability. Thus, for the same reasons detailed above, the chancellor did not abuse his discretion in denying the motion to reconsider. Specifically, Rule 59 of the Mississippi Rules of Civil Procedure offers an appropriate standard for a motion for reconsideration, and the Manesses wholly failed to present any evidence in the form of affidavits or otherwise regarding their claims as to why the Partial Motion for Summary Judgment on Damages should be denied. *See Cabral*, 853 F.3d at 766; *see also* Miss. R. Civ. P. 56(e).

### III.    The Dismissal of the Counterclaim under Rule 12

¶60.    Like review of a Motion for Summary Judgment, the grant or denial of a Motion to Dismiss under Rule 12 raises an issue of law and is reviewed *de novo*. *Richardson v. Sara Lee Corp.*, 847 So. 2d 821, 823 (Miss. 2003). "When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Cook v. Brown*, 909 So. 2d 1075, 1077–78 (Miss. 2005) (internal quotation omitted). Further, it must be that no set of facts would entitle the opposing party to relief. *Lowe v. Lowndes Cty. Bldg. Inspection Dep't*, 760 So. 2d 711, 712 (Miss. 2000).

¶61.    The counterclaim requested that the court enter a declaratory judgment adjudicating that all agreements between K&A and the Manesses had been terminated. Further, the Manesses alleged that K&A collected rent and that the declaratory judgment should require K&A to "disgorge any funds wrongfully withheld by it . . . ."

¶62.    K&A argued before the trial court that the agreement at issue in the counterclaim, whereby rents were exchanged, was not provided to the court, as required under Rule 10(d) of the Mississippi Rules of Civil Procedure. Further, K&A argued that the Manesses failed to state a claim against it because it was not a party to the contract for which the rents described in the counterclaim were exchanged. K&A stated that the agreement for which rents were exchanged was between A&H Management, LLC, and the Manesses. The Manesses responded that their counterclaim added "as Counter Defendants Arthur Geary and Lester J. Waldmann and A&H Management, LLC." Further, they filed a Motion to Allow

25

Defendants['] Compulsory Counterclaim that they never brought to hearing or pursued a ruling on.[12] The trial court granted the motion to dismiss, citing Rule 10(d) of the Mississippi Rules of Civil Procedure and citing the Manesses' failure to include specific agreements under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure.

¶63.    On appeal, K&A argues that the determinations under the Partial Motions for Summary Judgment made the counterclaim moot as to the requested declaratory judgment that all agreements have been terminated.  Further, it argues that it was not a party to the additional claims regarding the rents; therefore, dismissal was proper.  The Manesses argue their failure to attach the contract at issue for the rent to their complaint was not fatal to their claim.

¶64.    The Motions for Partial Summary Judgment addressed breach and termination of the agreements between the parties.  Therefore, the Motions for Partial Summary Judgment rendered the claims for declaratory judgment moot.

¶65.    Further, the Manesses are correct that refusal to attach the contract at issue to their complaint is no longer fatal.  *See 3M Co. v. Glass*, 917 So. 2d 90, 92-94 (Miss. 2005); *Crawford v. Butler*, 924 So. 2d 569, 576 (Miss. Ct. App. 2005).  However, this does not save their counterclaim.  The Manesses *admitted* that the party at issue in the agreement, for which rents were exchanged, was *not* K&A.  The Court cannot maintain a contract action against someone who is not a party to the action or in privity with it.  **Burns v. Washington Savings**, 171 So. 2d 322, 324 (Miss. 1965) ("It is a general rule of the law of contracts that in order

---

[12]The Motion to Allow Defendants['] Compulsory Counterclaim is not an issue on appeal.

to maintain an action to enforce the breach of a contract, or to recover damages growing out of the breach, or for failure to carry out the terms of the contract, it is ordinarily a necessary prerequisite that the relationship of privity of contract exist between the party damaged and the party sought to be held liable for the breach of the contract."). Thus, because K&A was not a party to the purported agreements for which rents were owed and the declaratory judgment sought is moot, the Court affirms the trial court on its grant of the Motion to Dismiss.

## CONCLUSION

¶66. The trial court correctly granted the Partial Motion for Summary Judgment on Liability, the Motion to Dismiss Portion of Counterclaim Pursuant to Rule 12 or, in the alternative, for Partial Summary Judgment, and the Partial Motion for Summary Judgment on Damages. Further, the trial court correctly denied both motions for reconsideration. Thus, the Court affirms the judgment of the trial court.

¶67. **AFFIRMED.**

**WALLER, C.J., KITCHENS, P.J., KING, COLEMAN AND BEAM, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., COLEMAN, BEAM AND ISHEE, JJ. RANDOLPH, P.J., NOT PARTICIPATING.**

**MAXWELL, JUSTICE, SPECIALLY CONCURRING:**

¶68. I write separately to address the Manesses' so-called motions "for reconsideration." While a harmless issue here, this case illustrates the confusion often created by such motions.

¶69. Technically, "[t]he Mississippi Rules of Civil Procedure do not provide for a motion for reconsideration." *McBride v. McBride*, 110 So. 3d 356, 359 (Miss. Ct. App. 2013). Rule

54(b) does makes clear that a decision, order, or judgment that disposes of less than all claims by all parties is interlocutory and therefore "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Miss. R. Civ. P. 54(b). But once a judgment becomes final, the trial court loses its inherent "free[dom] to reconsider and reverse its decision for any reason it deems sufficient[.]" *Cabral v. Brennan*, 853 F.3d 763, 766 n.3 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc)).

¶70.   Instead, the trial court's power to modify a final judgment is limited by Rules 59 and 60. *See* Miss. R. Civ. P. 59, 60. Under Rule 59, the trial court may grant a new trial or alter the judgment "if convinced that a mistake of law or fact has been made, or that injustice would attend allowing the judgment to stand." *McNeese v. McNeese*, 119 So. 3d 264, 272 (Miss. 2013). The trial court may also grant a new trial under Rule 59(a) based on newly discovered evidence. *Id.* Under Rule 60(a), the trial court may correct "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission . . . ." Miss. R. Civ. P. 60(a). And under Rule 60(b), a trial court, upon motion, "may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons":

> (1) fraud, misrepresentation, or other misconduct of an adverse party;
>
> (2) accident or mistake;
>
> (3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;

(6) any other reason justifying relief from the judgment.[13]

Miss. R. Civ. P. 60(b).

¶71.    To be granted any of the above relief requires more than mere "reconsideration." Yet over the years, Mississippi practitioners have filed a slew of post-trial motions generically titled "motions to reconsider." *McBride*, 110 So. 3d at 359-60. And once filed, courts are left to decipher what type of motion is actually being filed based on the timing and the substance of the request. A Rule 54(b) motion to revise an interlocutory order? A Rule 59(e) motion to alter or amend a final judgment? A Rule 59(a) motion for a new trial? A Rule 60(a) motion to correct an omission or clerical mistake? Or a Rule 60(b) motion for relief from a final judgment? *See, e.g., **City of Jackson v. Jackson Oaks Ltd. P'ship***, 792 So. 2d 983, 984-85 (Miss. 2001) (holding that the trial court erred by failing to treat a party's post-judgment motion, which was filed after the time limitation to file a Rule 59(e) motion, as a Rule 60(b) motion); ***Woods v. Victory Mktg., LLC***, 111 So. 3d 1234, 1236 (Miss. Ct. App. 2013) ("The timing of the motion for reconsideration determines whether it is a Rule 59 or Rule 60(b) motion.").

---

[13] Though, at first blush, Rule 60(b)(6) could be construed as empowering trial courts to reconsider their prior judgments for "any other reason," we have been clear that "[r]elief under Rule 60(b)(6) is reserved for extraordinary and compelling circumstances. ***Briney v. U.S. Fid. & Guar. Co.***, 714 So. 2d 962, 966 (Miss. 1998) (citations omitted).

29

¶72. That is exactly what the chancellor had to do here. Faced with a "Supplemental Motion to Reconsider" and a "Motion to Reconsider," it is understandable that the chancellor treated the Manesses' motion as a Rule 59(e) motion to alter or amend given that they put forth the reasons for granting a Rule 59(e) motion as justification for setting aside the grants of partial summary judgment. But, as the Manesses point out on appeal, a partial grant of summary judgment is a nonfinal order. And under Rule 54(b), the trial court may always set aside a nonfinal decision for any reason it deems just. *Cabral*, 853 F.3d at 766 n.3 ("[T]he higher standard in Rule 59(e) reflects the fact that judgment has already been entered, while the 'more flexible' Rule 54(b) standard reflects the district court's inherent power to grant relief from interlocutory orders 'as justice requires.'" (*quoting* *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015))).

¶73. So the Manesses are right. The trial judge *could* have "reconsidered" his interlocutory decision to grant partial summary judgment without requiring the Manesses to meet the more "exacting" standard of Rule 59(e). *Cabral*, 853 F.3d at 766. But in this case, I fail to see how the motion misidentification prejudiced the Manesses. Like the appellants in the case they rely on, *Cabral*, the Manesses "do[] not explain how [they] could have been harmed by the procedural error." *Id.* Beyond pointing out the trial court applied a more rigorous Rule 59(e) standard to a Rule 54(b) motion, they fail to demonstrate how the trial court's applying the correct standard would have led to a different outcome. Indisputably, K&A were entitled to summary judgment on the issues of liability and damages. So the trial court could hardly be held in error for refusing to revisit these decisions prior to their becoming final.

30

¶74. Here, the Manesses' using the Rule 59(e) standard to argue a Rule 54(b) motion led to harmless procedural error. But that may not hold true for every so-called "motion for reconsideration." Motions for relief under Rules 54(b), 59(a), 59(e), 60(a), and 60(b) are not interchangeable. And courtroom lawyers would be wise not only to appreciate the differences between these rules but also label their motions according to the precise relief they seek.

**WALLER, C.J., COLEMAN, BEAM AND ISHEE, JJ., JOIN THIS OPINION.**