# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CP-00685-COA

**JOSEPH MADISON HIGDON**                                          **APPELLANT**

**v.**

**EMMA PINKSTON AND ROBERT PINKSTON**                        **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/30/2023 |
| TRIAL JUDGE: | HON. DEBRA MICHELLE GILES |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH MADISON HIGDON (PRO SE) |
| ATTORNEY FOR APPELLEES: | CHRISTOPHER JACKSON WELDY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 11/25/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Robert and Emma Pinkston filed a complaint in the Humphreys County Chancery Court to resolve the location of the boundary between their property and their neighbor's property. The Pinkstons asserted that their neighbor, Joseph Higdon, built a fence that encroached on the Pinkstons' property. Higdon filed an answer and counterclaim asserting, among other things, that the fence was on his property.

¶2.     The Pinkstons eventually filed a motion for summary judgment, which the chancellor granted. Higdon filed his notice of appeal and subsequently filed a motion to appeal in forma pauperis (IFP). The chancellor denied Higdon's motion to proceed IFP.

¶3.     Higdon, proceeding pro se, argues that the chancellor erred by granting summary

judgment in favor of the Pinkstons. Higdon also appeals the chancellor's denial of his motion to proceed IFP on appeal.

¶4. After our review, we find no error. We therefore affirm the chancellor's order granting summary judgment in favor of the Pinkstons and the chancellor's denial of Higdon's motion to proceed IFP on appeal.

## FACTS

¶5. In August 2022, the Pinkstons observed their next-door neighbor, Higdon, erecting fence poles in the Pinkstons' backyard. The Pinkstons asked Higdon to remove the fence poles that encroached on their property. Higdon maintained that the poles were on his property, and he refused to remove them.

¶6. In response, the Pinkstons hired licensed surveyors to confirm the boundary lines of their property and Higdon's property. The survey was conducted in August 2022 and revealed that at the widest point, Higdon's fence encroached ten feet onto the Pinkstons' property. The Pinkstons showed the survey to Higdon and again requested that he remove the fence poles. Higdon refused and continued erecting the fence.

¶7. In January 2023, the Pinkstons filed a complaint against Higdon in chancery court asserting that Higdon encroached on their property and requesting that Higdon be required to remove the encroaching portion of the fence. Higdon responded by filing an answer and counterclaim. In May 2023, the Pinkstons filed a motion for summary judgment, arguing that no genuine issue of material fact existed and that the Pinkstons were entitled to judgment as a matter of law. In support of their motion, the Pinkstons attached the following exhibits:

2

a plat map showing the boundary line of the Pinkstons' property and Higdon's property; a warranty deed confirming the ownership and legal description of the Pinkstons' property; the August 2022 survey of the Pinkstons' property showing that Higdon's fence encroached on the Pinkstons' property; and Emma Pinkston's affidavit stating that she repeatedly asked Higdon to remove the fence poles, both before and after the survey, and he refused. Higdon did not file a response to their motion.

¶8.     The chancery court held a hearing on the Pinkstons' motion, and Higdon appeared pro se. During the hearing, the chancellor heard testimony from Jason Prudent, an assistant engineer for the company that performed the survey of the Pinkstons' property. Prudent testified that the survey showed Higdon's fence encroached on the Pinkstons' property. Higdon did not call any witnesses to testify at the hearing, but he did cross-examine Prudent.

¶9.     At the hearing, Higdon testified that he disputed the location of the boundary line depicted in the Pinkstons' exhibits to their summary judgment motion. Higdon claimed that he had been told his entire life that the boundary lines from the original survey of the properties were not correct, and he maintained that he had witnesses and a survey to support his claim. Higdon also announced that he intended to prove adverse possession. Upon questioning by the chancellor, Higdon admitted he did not respond to the Pinkstons' summary judgment motion. Higdon also admitted that he did not have any witnesses present at the hearing to testify or any evidence to counter the Pinkstons' August 2022 survey.

¶10.    At the conclusion of the hearing, the chancellor granted summary judgment in favor of the Pinkstons. The chancellor explained that Higdon failed to produce any evidence to

show the existence of a genuine issue for trial. The chancellor also ordered Higdon to remove the fence from the Pinkstons' property and pay the Pinkstons' attorney's fees.

¶11. Higdon now appeals the chancellor's May 30, 2023 order granting summary judgment and the chancellor's August 15, 2023 denial of Higdon's motion to appeal IFP.

## DISCUSSION

### I. Higdon's "Petition for Permission for Interlocutory Appeal and Motion to Suspend Briefing Schedule"

¶12. We turn first to address a preliminary matter. The record reflects that after filing his notice of appeal, Higdon filed a motion in the chancery court requesting the production of a transcript of the May 30, 2023 hearing on the Pinkstons' motion for summary judgment. No court reporter was present for the hearing, but the chancellor made an audio recording of the proceedings. Upon Higdon's motion, the court provided the audio recording to the court reporter, and the court reporter used the recording to provide a full transcript of the proceeding.

¶13. On November 13, 2024, Higdon filed a motion with the Mississippi Supreme Court seeking to set aside the transcript of the May 30, 2023 hearing. Higdon claimed that the transcript contained "numerous critical deficiencies," and he included his proposed corrections to the transcript. Relevant to his burden of proof as the non-moving party for summary judgment, Higdon claimed that the transcript failed to reflect that he had several witnesses present at the hearing who were ready to testify. The supreme court entered an order remanding the case to the chancery court for a hearing pursuant to Mississippi Rule of Appellate Procedure 10(e) to determine whether the transcript needed to be corrected.

4

¶14.   The chancellor held a hearing on Higdon's motion and considered his proposed corrections to the transcript.  On March 4, 2025, the chancellor entered an order denying Higdon's motion.  In her order, the chancellor addressed Higdon's claim that the transcript should be corrected to reflect that he had several witnesses present at the summary judgment hearing.  The transcript of the hearing shows that when the chancellor asked Higdon whom he planned to call to testify at the hearing, Higdon responded, "I don't have anyone."  In his motion, Higdon claimed that he actually stated, "I have four witnesses."  The chancellor found that it "cannot be possible for the court reporter to have transcribed [Higdon's] statement so erroneously that she noted the complete opposite of what he allegedly stated."  The chancellor further noted that per the court's records, Higdon did not have any witnesses present at the hearing.  The chancellor observed that "the court and court reporter's records and Higdon's recollection of the trial are vastly different."  The chancellor acknowledged that Rule 10(e) allows for corrections to be made to the record "[i]f anything material to either party is omitted from the record by error or accident or is misstated in the record."  However, the chancellor determined that nothing material to Higdon's case was omitted from the record.

¶15.   On March 11, 2025, Higdon filed a pro se "petition for permission for interlocutory appeal and motion to suspend the briefing schedule" in the supreme court.  Through his motion, Higdon sought to challenge the chancellor's order denying his request to modify the transcript.  The supreme court entered a panel order on June 24, 2025, passing Higdon's motion for consideration with the merits of the appeal.  The order reflects that Higdon's

motion "is in the nature of a motion to supplement or correct the appellate record."

¶16.    In Higdon's March 2025 motion, he challenges the chancellor's refusal to modify the transcript.  Higdon also attempts to bolster his claim on appeal that the chancellor improperly granted summary judgment by not allowing him to call witnesses to support his opposition to the summary judgment motion.  Higdon attached seven documents as exhibits to his March 2025 motion, including an affidavit from Jeffrey Price dated March 10, 2025.  In the affidavit, Price stated that he was present at the May 30, 2023 hearing and prepared to testify as a witness.  Higdon did not attach an affidavit from Price, or any other exhibits, to his November 15, 2024 motion to set aside the transcript.

¶17.    In considering Higdon's March 2025 motion, we keep in mind that "Rule 10(e) is not a vehicle for admitting new evidence into the record, a role generally reserved for the trial court; rather Rule 10(e) is a method for correcting the appellate record to reflect what occurred in the trial court." *Miss. True v. Dzielak*, 293 So. 3d 243, 248 (¶13) (Miss. 2020) (internal quotation marks omitted).  Additionally, Mississippi Rule of Appellate Procedure 10(f) states that "[n]othing in [Rule 10] shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate, and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal."  M.R.A.P. 10(f).

¶18.    Our review of the record shows that Higdon failed to present any credible evidence to support his proposed corrections to the transcript—namely, that he had witnesses ready to testify and present evidence in support of his opposition to the Pinkstons' summary

6

judgment motion. *See Morris v. State*, 303 So. 3d 9, 21 (¶¶41, 43) (Miss. Ct. App. 2020).

After a hearing on Higdon's motion and proposed corrections, the chancellor found that

Higdon's recollection of the May 30, 2023 summary judgment hearing was "vastly different"

than the chancellor's records and the court reporter's transcription. The transcript from the

May 30, 2023 hearing reflects that Higdon testified that he did not have any witnesses

present, and we find nothing in the record to contradict this statement. The court reporter

transcribed the summary judgment proceedings from the audio recording provided by the

chancellor and certified the transcript as accurate. *See* M.R.A.P. 11(c) (stating "the reporter

shall certify the transcript as an accurate account of the proceedings and file the original and

one copy of the transcript with the clerk of the trial court"). "Under Mississippi law and

precedent, this means the transcript is presumed correct." *Jones v. State*, 382 So. 3d 558, 567

(¶45) (Miss. Ct. App. 2024); *see also* Miss. Code Ann. § 9-13-43 (Rev. 2019) ("When a

transcript has been made by the official reporter and certified to as being a correct

transcript[,] . . . the same shall be prima facie a correct statement thereof[.]").

¶19.    Based on the foregoing, we deny Higdon's March 11, 2025 "petition for permission

for interlocutory appeal and motion to suspend the briefing schedule."

## II.    Summary Judgment

¶20.    On appeal, Higdon argues that the chancellor erred by granting summary judgment

in favor of the Pinkstons.[1]

---

[1] In the chancellor's order granting summary judgment, she ordered Higdon to remove the encroaching fence within ten days and to pay attorney's fees to the Pinkstons. In his appellate brief, Higdon does not raise assignments of error as to these rulings, other than to assert that he "had no say in that discussion."

7

¶21. We review a trial court's order granting summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 409 (¶16) (Miss. 2018). Summary judgment "shall" be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶22. In responding to a motion for summary judgment, Higdon, as the non-moving party, "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). Indeed, he must come forward with "specific facts showing that there is a genuine issue for trial." *Id*. "Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Mixon v. Berry*, 351 So. 3d 983, 987 (¶8) (Miss. Ct. App. 2022).

¶23. In support of their motion for summary judgment, the Pinkstons attached the following exhibits: a plat map showing the boundary line of the properties at issue; a warranty deed confirming the ownership and legal description of the Pinkstons' property; the August 2022 survey of the Pinkstons' property; and Emma Pinkston's affidavit. At the hearing on the summary judgment motion, an assistant engineer for the surveying company testified for the Pinkstons. The assistant engineer opined that the August 2022 survey

8

showed that Higdon's fence encroached on the Pinkstons' property.

¶24. Higdon admittedly did not respond to the motion for summary judgment. At the hearing, Higdon argued that the boundary lines reflected in the plat book and survey were incorrect. Higdon informed the chancellor that he "[had] been told [his] entire life that the original survey and that the footage in it was not correct." Higdon failed to present any evidence to support his contention—other than his own testimony—that the boundary lines reflected in the plat book and survey were incorrect.

¶25. The crux of Higdon's argument on appeal is that he had four witnesses present at the hearing, and the chancellor erred by refusing to allow these witnesses to present evidence in opposition to the summary judgment motion and "to make his case for [a]dverse [p]ossession." As stated above, the transcript contradicts Higdon's claim that he had four witnesses present and ready to testify at the hearing:

> THE COURT: All right. Well, here's what I'm going to do. Out of an abundance of caution, because I don't know where we will get, who will you call to testify, Mr. Higdon?
>
> MR. HIGDON: I don't have anyone. My problem is the motion for summary judgment—
>
> . . . .
>
> THE COURT: All right. And all of these are witnesses for the Pinkston[s], other than Mr. Robert Pinkston? Mr. Robert Pinkston, you can come up because I think you're also the petitioner. Everyone else, if you will step out in the hallway . . . .

Accordingly, we find no merit to Higdon's claim that the chancellor refused to allow his witnesses to testify at the hearing and present evidence.

9

¶26. Turning to address Higdon's burden as the non-moving party for summary judgment, we find that Higdon failed to respond to the Pinkstons' motion with "specific facts showing that there is a genuine issue for trial," as required by Rule 56(e). *See Dobbs v. Crawford*, 177 So. 3d 448, 452 (¶15) (Miss. Ct. App. 2015) (finding that summary judgment was proper in boundary-dispute case where non-movant failed to present any evidence, other than his own testimony, to support his contention that he owned the property at issue). Accordingly, we find that the chancellor did not err in granting summary judgment.

### III.     Motion to Proceed IFP on Appeal

¶27. Although Higdon filed a notice of appeal from the chancellor's order denying his motion to proceed IFP on appeal, Higdon does not address this issue in his appellate brief. When an appellant provides "no meaningful argument or citation to relevant authorities to support and develop his issues on appeal," the issue is procedurally barred. *Reading v. Reading*, 350 So. 3d 1195, 1200 (¶21) (Miss. Ct. App. 2022) (citing M.R.A.P. 28(a)(7)).

¶28. Procedural bar notwithstanding, the supreme court has held that an indigent civil litigant does not have a right to proceed IFP on appeal. *Nelson v. Bank of Miss.*, 498 So. 2d 365, 365-66 (Miss. 1986). We find no error in the chancellor's denial of Higdon's motion to proceed IFP on appeal.

### CONCLUSION

¶29. Finding no error, we affirm the chancellor's order granting summary judgment and the chancellor's denial of Higdon's motion to proceed IFP on appeal.

¶30. **AFFIRMED.**

10

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**