# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01328-COA

| | |
|---|---|
| **WILLIAM O. RIVES, II AND RICHARD T. RIVES** | **APPELLANTS** |

**v.**

| | |
|---|---|
| **JASON G. ISHEE AND GB BROOKHAVEN, LLC** | **APPELLEES** |

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2020 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | GEORGE CAYCE NICOLS |
| ATTORNEY FOR APPELLEES: | C. BRENT JONES |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/08/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.     Two partners sued a third over their deal to open a restaurant. They alleged they were locked out of profits in a breach of contract. However, they did not file suit until over three years after they learned they would not receive any money from the restaurant. The trial court dismissed the suit as untimely. Finding no error, we affirm.

## FACTS

¶2.     William and Richard Rives had a company that leased property by railroad tracks in downtown Brookhaven. In 2014 the brothers struck a deal with Jason Ishee to open a Georgia Blue restaurant in the spot. The three partners created a joint company called R.I.R., LLC, which would run the restaurant, and they signed an operating agreement and

memorandum of understanding that set up the company's duties and financial obligations.

¶3. The Rives brothers alleged they next gave up their lease and negotiated a new one for the Georgia Blue restaurant. The brothers were to put up $75,000 to set up the new restaurant, and Ishee was to stake another $75,000.

¶4. The arrangement did not work the way the Rives brothers thought it would. They alleged that immediately after signing the various documents, they "offered to immediately tender" the $75,000, but Ishee declined. The Riveses then claimed "they offered to pay the $75,000 investment approximately ten more times over the following months." Each time, Ishee told them he would let them know if he needed the money, but declined to accept it.

¶5. The following spring, in 2015, the new restaurant opened in Brookhaven after the brothers and Ishee had worked to renovate the space. After a few months of not seeing any money from Georgia Blue, the brothers became concerned. In August 2015, they asked Ishee if they could look over the restaurant's finances.

¶6. The response to this request came from Ishee's lawyer. He told the brothers that they hadn't contributed their $75,000, so they could not see the documents. A few months later, Ishee unilaterally dissolved the R.I.R. company in a filing with the Secretary of State.

**PROCEDURAL HISTORY**

¶7. About a year later, the Rives brothers filed a lawsuit against Ishee and the Georgia Blue parent company. The suit was not pursued and grew stale; it was dismissed for want of prosecution. There was no appeal from that dismissal.

¶8. On April 5, 2019, the brothers again filed suit against Ishee and Georgia Blue. In this

2

second lawsuit, they specifically alleged that Ishee's "refusals to accept the Plaintiffs[']" contribution amounted to a breach of contract" and that "Ishee compounded this breach by refusing to grant Plaintiff[s] access to the financial records of the restaurant and by refusing to pay distributions to the Plaintiffs as required[.]" The brothers also claimed it was a breach of contract for Ishee to dissolve their joint company. They sought a judgment "for breach of contract and quantum meruit[.]"

¶9. Just twelve days later, the defendants responded with a motion to dismiss. The motion, notable for its brevity, argued that the second lawsuit was time-barred. In a hearing before the chancery court, counsel for Ishee pointed out that by the very language of the Riveses' own complaint the conduct they alleged constituted breach occurred more than three years before they filed suit. In fact, counsel argued the alleged breaches happened almost five years before they filed suit, if indeed the refusal to accept the $75,000 stake was a breach.

¶10. From the Bench, the trial court held that the "statute of limitations applies, in that the matter is outside the time period for prosecution as it relates to these facts and circumstances." This dismissal of all claims was reduced to an order, from which the Rives brothers sought reconsideration; and from the denial of that request, they filed a notice of appeal.

## STANDARD OF REVIEW

¶11. "When considering a motion to dismiss, this Court's standard of review is de novo." *Scaggs v. GPCH-GP Inc.*, 931 So. 2d 1274, 1275 (¶6) (Miss. 2006). "[T]he allegations in

3

the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id*.

## DISCUSSION

¶12. The Riveses make two arguments on appeal. First, the brothers argue that their breach-of-contract claims were not filed past the statute of limitations; and second, they argue their claim for quantum meruit was not time-barred.

### I. The claims for breach of contract are time-barred.

¶13. Causes of action for breach of contract are subject to the three-year statute of limitations. *White v. White*, 325 So. 3d 666, 675-76 (¶39) (Miss. Ct. App. 2019). However, if the claim is one that "involve[s] latent injury," then "the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2) (Rev. 2019).

¶14. As set out in the facts above, this was the second complaint the Riveses filed. In general, "filing a complaint tolls the statute of limitations and permits a plaintiff to refile his or her case if this case is dismissed without prejudice and time remains on the statute of limitations." *Knight v. Knight*, 85 So. 3d 832, 836 (¶24) (Miss. 2012). However, "a statute of limitations is not tolled during a proceeding that is dismissed ultimately for failure to prosecute, regardless of whether the dismissal is initiated by the clerk, the judge, or a party." *Thornhill v. Ingram*, 178 So. 3d 721, 727 (¶28) (Miss. 2015). Because the Riveses' first complaint was dismissed for lack of prosecution, the statute of limitations was not paused

during its pendency.

¶15.    By the express allegations in their own complaint, the Rives brothers admit there were no latent injuries.  They were well aware that Ishee had repeatedly declined to accept their tender of the $75,000 capital investment.  By their own allegations, Ishee's refusal to accept the investment "amounted to a breach of contract," which they alleged he had done "approximately ten" times in 2014 and 2015.  They further alleged these underlying breaches were "compounded . . . by refusing to grant [them] access to the financial records of the restaurant and by refusing to pay distributions to [them] as required" by their written agreements.[1]

¶16.    Yet even when accepting the allegations in the second complaint as true, all of those alleged breaches occurred during or before the "August of 2015" date when the Riveses contended Ishee's lawyer responded by denying them access to financial records.  The actual date of the lawyer's  response and the written response itself is not in the record.  However, even assuming the response occurred on August 31, 2015—the last day of the month—the second complaint was not filed until April 5, 2019.  This means it was filed over seven months after the three-year limitations had run on these alleged breaches.

¶17.    Therefore, by the plain language of precedent and statute, the chancery court was

_____

[1] Although the Riveses repeatedly refer in their second complaint to the operating agreement and a related memorandum of understanding, these documents were not attached to the complaint and are not in the record.  While the failure "to attach the contract at issue to their complaint is no longer fatal" under our precedent, it does frustrate appellate review of a contract dispute. *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 418 (¶64) (Miss. 2018); *see* MRCP 10(d) ("When any claim or defense is founded on an account or other written instrument, a copy thereof should be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading.").

5

correct to find the claims for breach of contract barred by the running of the statute of limitations.

¶18. The Riveses attempt to salvage their claims by arguing they also alleged harm from Ishee's unilateral dissolution of their joint R.I.R. company, which the Secretary of State filed on April 7, 2016. They point out that their second complaint was filed on April 5, 2019, just within three years of the date of the company's dissolution.

¶19. For almost a century now, our Supreme Court has held "[i]n the case of a breach of contract, the cause of action accrues at the time of the breach, regardless of the time when the damages from the breach occurred; this is the general rule." *Johnson v. Crisler*, 156 Miss. 266, 125 So. 724, 724-25 (1930); *Young v. S. Farm Bureau Life Ins. Co.*, 592 So. 2d 103, 107 (Miss. 1991) (reiterating the rule in *Johnson*).

¶20. The *Johnson* rule was applied by this Court when we examined the claim by a professor at Mississippi Valley State University that she had been wrongfully fired. *Black v. Ansah*, 876 So. 2d 395, 396 (¶3) (Miss. Ct. App. 2003). While it was "undisputed that the University notified [her] of its employment decision by letter dated May 28, 1999," the professor's last day at work was May 11, 2000. *Id*. at 398 (¶17). She argued this later date was when the statute began to run. *Id*.

¶21. We found that there was "no reason to conclude that a person with known and measurable harm that awaits solely the passage of time to inflict itself, may not sue because of that futurity until the time has passed." *Id*. at 399 (¶19). In other words, once notice of the breach has been received, then the time to file suit accrues. As a result, we found the

6

professor's suit was time-barred. *Id*. at 400 (¶23).

¶22. Applying *Johnson* and *Black* to this case, the fact that Ishee later dissolved the R.I.R. company does not save the Riveses' claims from the three-year time-bar. The dissolution of the company is like the professor's last date of employment in *Black*. The breaches alleged by the Rives brothers were Ishee's refusals to accept their capital investment "approximately ten" times throughout 2014 and 2015, the denial of access to financial records in "August of 2015," and refusal to pay them distributions from the restaurant's profits. All of these events occurred months before the April 7, 2016 dissolution of the company.

¶23. As a result, the dissolution of the company was a mere formality that does not change the time of the breach. The business venture was clearly dead months before then, with the fatal act being Ishee's lawyer's response in "August of 2015" denying the Riveses access to the financial papers of the company and any distribution of profits. The dissolution of the company was the proverbial nail in the lid of the coffin. The claims are time-barred.[2]

## II.    Quantum meruit does not apply.

¶24. Second, the Rives brothers argue that even if their breach-of-contract claims are time-barred, their alternate theory of recovery for quantum meruit remains alive. In doing so, they

---

[2] The Riveses also did not expressly claim that the dissolution of the R.I.R. company caused them any separate harm. Under our standard of review, we are bound to accept the allegations of their complaint as true. The second complaint only alleged that the dissolution "*likely* breached the R.I.R., LLC lease, to which Plaintiffs are personal guarantors." (Emphasis added). On its face, the second complaint did not allege that the Riveses had suffered any actual harm or loss as a result of the dissolution, and so this allegation does not impact our decision. *See Lovett v. E.L. Garner Inc.*, 511 So. 2d 1346, 1352 (Miss. 1987) (holding that "[d]amages for breach of contract must be proven with reasonable certainty and not based merely on speculation and conjecture" (internal quotation marks omitted)).

7

concede that the statute of limitations for a claim for a quantum meruit is three years. *See*

*The Law Firm of Logan & Bise v. Stewart* (*In re Est. of Stewart*), 732 So. 2d 255, 260 (¶17)

(Miss. 1999); Miss. Code Ann. § 15-1-49.

¶25. "Quantum meruit means literally 'as much as he deserves[.]'" *Redd v. L & A*

*Contracting Co.*, 246 Miss. 548, 554, 151 So. 2d 205, 207 (1963). This remedy "applies to

situations where there is no legal contract but where the person sought to be charged is in

possession of money or property which in good conscience and justice he should not retain

but should deliver to another . . . ." *Ace Pipe Cleaning Inc. v. Hemphill Const. Co.*, 134 So.

3d 799, 806 (¶29) (Miss. Ct. App. 2014).

¶26. In this case, accepting the claims of the second complaint as true, there was a contract

between the Rives brothers and Ishee to set up, run, and profit from the Georgia Blue in

Brookhaven. "Where there is a contract, parties may not abandon same and resort to

quantum meruit." *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.

2d 954, 970 (¶48) (Miss. 1999) (internal quotation marks omitted). As the Supreme Court

set out decades ago:

> As in physics, two solid bodies cannot occupy the same space at the same time,
> so in law and common sense, there cannot be an express and an implied
> contract for the same thing, existing at the same time. This is an axiomatic
> truth. It is only where parties do not expressly agree, that the law interposes
> and raises a promise.

*Redd*, 246 Miss. at 556, 151 So. 2d at 208.

¶27. Because the Riveses and Ishee had a contract for their business, the remedy of

quantum meruit is inapplicable. Even if it were applicable, the claims would have likewise

been barred by the statute of limitations.

## CONCLUSION

¶28.     For these reasons, the Chancery Court of Madison County is **AFFIRMED**.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.  GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, J.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶29.     Given that Ishee did not file articles of dissolution until April 7, 2016, I respectfully dissent from Part I of the majority's opinion that the Riveses untimely filed suit for wrongful dissolution on April 5, 2019.

¶30.     On April 7, 2016, Ishee unilaterally filed articles of dissolution.  The Riveses then filed suit against Ishee on April 5, 2019, for multiple breaches of contract, including wrongful dissolution.  The chancery court dismissed the suit in its entirety as untimely.

¶31.     Causes of action for written contracts are subject to a three-year statute of limitations. *Levens v. Campbell*, 733 So. 2d 753, 758 (¶15) (Miss. 1999).  This three-year limitations period begins to run "after the cause of such action accrued . . . ."  Miss. Code Ann. § 15-1-49(1) (Rev. 2019).  Our Supreme Court has interpreted this language to mean that the period does not begin to run until the "the contract is allegedly breached." *Hughes v. Shipp*, 324 So. 3d 286, 291 (¶15) (Miss. 2021).  In other words, "[the] cause of action must exist and be complete before an action can be commenced . . . ." *Black v. Ansah*, 876 So. 2d 395, 398 (¶15) (Miss. Ct. App. 2003) (quoting *Owens-Illinois v. Edwards*, 573 So. 2d 704, 706-07

(Miss. 1990)).

¶32. I disagree with the majority's conclusion that "the dissolution of the company was a mere formality that does not change the time of the breach." *Ante* at ¶23; *see Black*, 876 So. 2d at 398 (¶17). The Riveses could not have brought a suit against Ishee for wrongful dissolution until R.I.R., LLC was actually dissolved. *See Black*, 876 So. 2d at 398 (¶15). Ishee did not completely dissolve the company until he filed articles of dissolution on April 7, 2016. Miss. Code Ann. § 79-11-337(2) (Rev. 2013) ("A corporation is dissolved upon the effective date of its articles of dissolution."). Contrary to the majority's opinion that the dissolution was a "mere formality," there must be actual notice of the breach rather than speculation. *See, e.g.*, *Young v. S. Life Ins. Co.*, 592 So. 2d 103, 107 (Miss. 1991) ("[T]he statute of limitations begins to run on an insurance claim when the insured first receives *written notification* that a specific claim was denied." (emphasis added) (quoting *Loewer v. New York Life Ins. Co.*, 773 F. Supp. 1518, 1521-22 (M.D. Fla.1991))); *accord Black*, 876 So. 2d at 399 (¶¶20-21) (reasoning that all the elements for a tort action against a university were present when Black received a letter notifying Black of her termination of employment). The Riveses lacked actual notice of the dissolution until Ishee filed the articles of dissolution on April 7, 2016. Thus, the statutory limitations period did not begin to run until April 7, 2016. The Riveses had three years from that date to file a complaint for wrongful dissolution. Because the Riveses filed a complaint on April 5, 2019, which included the alleged wrongful-dissolution claim, the Riveses' complaint, as it pertains to the wrongful dissolution claim, is timely.

10

¶33. For these reasons, we should reverse the chancery court's ruling on the wrongful dissolution claim and remand for further proceedings.

**GREENLEE, J., JOINS THIS OPINION.**